IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| LOUIS HENDERSON, et al., | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:11cv224-MHT |
| | ) | (WO) |
| KIM THOMAS, Commissioner, | ) | |
| Alabama Department of | ) | |
| Corrections, et al., | ) | |
| | ) | |
|     Defendants. | ) | |

<u>OPINION AND ORDER</u>

The plaintiffs are eight HIV+ inmates who challenge the policy of the Alabama Department of Corrections of segregating HIV+ inmates from the general prison population. The plaintiffs claim that the defendants (the ADOC Commissioner and four wardens) have discriminated against them on the basis of a disability (HIV+ status) in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 <u>et</u> <u>seq.</u>, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Jurisdiction is proper under 28 U.S.C. § 1331 (federal question).

The case is currently before the court on the plaintiffs' motion for certification of a class consisting of all present and future HIV+ inmates incarcerated in ADOC prisons. For the reasons that follow, the court will certify this class under Federal Rule of Civil Procedure 23(a) and (b)(2).


## I. CLASS-CERTIFICATION STANDARD

Federal Rule of Civil Procedure 23 "establishes the legal roadmap courts must follow when determining whether class certification is appropriate." Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181, 1187 (11th Cir. 2003). The party seeking to maintain the class action bears the burden of demonstrating that all the requirements of Rule 23 have been met. Id.

"A class action may be maintained only when it satisfies all the requirements of Fed. R. Civ. P. 23(a)

2

and at least one of the alternative requirements of Rule 23(b)." Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997) (footnotes omitted). Failure to establish any one of the four prerequisites under Rule 23(a) and at least one of the alternative requirements of Rule 23(b) precludes class certification. Valley Drug, 350 F.3d at 1188.[1]

The court's role at the class-certification stage is not to decide the merits of the case, but rather to determine whether the purported class representative satisfies the procedural requirements for class certification. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974). However, "the trial court can and should consider the merits of the case to the degree

---

1.   The prerequisites to a class action are numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Here, the plaintiffs seek a class certified under Rule 23(b)(2), which is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

3

necessary to determine whether the requirements of Rule 23 will be satisfied." Valley Drug, 350 F.3d at 1188 n.15.


## II.  BACKGROUND

The eight plaintiffs (Louis Henderson, Dana Harley, Darrell Robinson, Dwight Smith, Albert Knox, James Douglas, Alqadeer Hamlet, and Jeffery Beyer) are inmates who have been diagnosed with HIV.  They allege that ADOC maintains a policy that segregates them from the general prison population and discriminates against them on the basis of a disability, namely their HIV status.  They seek to represent and have certified a class to pursue their statutory claims.  They seek declaratory and injunctive relief requiring the defendants to end these allegedly illegal practices.

Alabama law requires HIV testing for all prisoners. 1975 Ala. Code §§ 22-11A-17 & 22-11A-38.  Alabama law, however, is silent on the segregation of HIV+ prisoners.

The defendants' HIV-segregation policy dictates that HIV+ inmates are housed in separated accommodations, both inter- and infra-facility and regardless of security classification.

Alabama has five levels of prisoner classification: close-custody, medium, minimum-in, minimum-out, and minimum-community. Security classification is a multi-factor analysis that includes an individual's criminal history, past convictions, past violence, length of sentence, and pendency of unresolved charges. Atchison Affidavit (Doc. No. 47-1) ¶ 3.

Close-custody is "reserved for prisoners who have demonstrated severe behavioral problems, some prisoners sentenced to life without parole, and some detainees awaiting trial or sentencing for capital offenses." Second Amended Complaint (Doc. No. 61) ¶ 37. Medium-custody prisoners are held at medium- or close-security institutions and are housed in double-occupancy cells or

dormitories.  Medium-custody prisoners may receive work assignments inside a secure facility.

The "minimum" classification includes three sub-parts, all of which permit some type of work outside a secure facility.  Most important for present purposes, only minimum-out and minimum-community inmates may transfer to a work-release center.  Atchison Affidavit (Doc. No. 47-1) ¶ 5.

The plaintiffs allege that, despite this classification system, all HIV+ inmates are housed in four facilities.  Male HIV+ inmates are housed at either Limestone Correctional Facility or Decatur Work Release/Community Work Center.  Female HIV+ inmates are housed at either Julia Tutwiler Prison for Women or the Montgomery Women's Facility.

The centerpiece of Alabama's segregation policy is that HIV+ prisoners are housed at certain facilities and completely barred from others.  For instance, male inmates who have a six-month clear record may apply to

transfer to a facility closer to their families.  Id.
¶ 13.  While no inmate has a right to transfer, HIV+ male
inmates are prohibited entirely from transferring.  Thus,
the male plaintiffs are barred from approximately two
dozen facilities around the State.

The HIV-segregation policy is replicated within
facilities.  At Limestone, all HIV+ prisoners are housed
on the A-side.  HIV+ prisoners, therefore, are excluded
from the general population area in B-Side and the Faith-
Based Honor Dorm in C-Side.  They are also barred from
the senior dormitory in A-Side.  Limestone separates HIV+
prisoners by forcing them to wear white armbands, thereby
disclosing their health status to fellow prisoners,
staff, and visitors.

Because Alabama has far fewer female inmates, it
maintains only one secure institution (Julia Tutwiler
Prison for Women) and two work-release facilities for
women.  Within Tutwiler, HIV+ prisoners are housed in two
of 15 housing units: an HIV dormitory and the healthcare

unit. Despite these differences in institutional setting, the HIV-segregation policy as applied to females mirrors the male counterpart.

The plaintiffs further allege that ADOC utilizes a discriminatory medical-clearance policy when deciding which inmates to send to work-release facilities. According to the plaintiffs, the policy forces inmates to start antiretroviral medications before their viral loads require it. Second Amended Complaint (Doc. No. 61) ¶ 86. The plaintiffs, therefore, allege discriminatory treatment in transferring male prisoners to Decatur Work Release and female prisoners to Montgomery Women's Facility. Id. ¶¶ 89-90.

Additionally, the plaintiffs claim that ADOC's segregation policy impacts certain programs. HIV+ inmates, for example, are barred from the residential component of any program, such as Limestone's substance-abuse program. And by implication, the plaintiffs are barred from programs at the majority of ADOC's prisons.

8

The HIV-segregation policy extends beyond residential areas and prohibits HIV+ inmates from obtaining food-service employment. Finally, the plaintiffs assert that the HIV-segregation policy results in disparate punishment and the unlawful disclosure of their medical status.

The court offers this background based on the evidence presented so far on the class-certification motion. This background is, of course, not binding on the court at trial. The court also recognizes that the named plaintiffs may have changed, and are changing, since the court began considering the class-certification motion. But the ultimate question is whether these are class members who are currently subject to the defendants' alleged discriminatory policy, with perhaps a change in class representation. Nevertheless, to the extent the evidence at trial differs materially from this background, the defendants may ask the court to revisit the class-certification issue.

9

### III.  DISCUSSION

The plaintiffs seek certification pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2).  The court addresses each requirement for class certification in turn.

### A.  Numerosity

Numerosity is satisfied if joinder of all class members would be impracticable.  Courts have held that classes containing 41 or more members are usually sufficiently large under Fed. R. Civ. P. 23(a)(1).  <u>See</u>, <u>e.g.</u>, <u>Cox v. American Cast Iron Pipe Co.</u>, 784 F.2d 1546, 1553 (11th Cir. 1986).  Moreover, the fluid nature of a plaintiff class--as in the prison-litigation context--counsels in favor of certification of all present and future members.  <u>See</u> <u>Kilgo v. Bowman Transp. Inc.</u>, 789 F.2d 859, 878 (11th Cir. 1986) (affirming a certified class of 31 present members and future members, who could not be identified); <u>Green v. Johnson</u>, 513 F. Supp. 965,

10

975 (D. Mass. 1981) (Freedman, J.) (finding numerosity after considering "the fact that the inmate population at these facilities is constantly revolving").

Here, the plaintiffs have submitted evidence, and the defendants concede, that approximately 260 ADOC inmates are HIV+. The plaintiffs, therefore, easily satisfy the numerosity requirement.

The defendants respond by parsing the plaintiffs' proposed class in multiple ways. For instance, the defendants contend that 180 of the 260 HIV+ inmates are ineligible for work release because of their security classification. Defendants' Brief (Doc. No. 47) at 45. But this still leaves approximately 80 HIV+ inmates who are eligible for a work-release transfer, a number that easily satisfies Rule 23(a)(1). The defendants' argument does not even speak to the plaintiffs' broader claim to be eligible to transfer to other ADOC prisons or to even move within Limestone or Tutwiler.

11

Relatedly, the defendants assert that at least one named plaintiff must be eligible for and seek a <u>specific program</u> to satisfy the numerosity requirement. The defendants misconstrue the plaintiffs' claims. The plaintiffs challenge ADOC's HIV-segregation policy <u>as a policy</u>, not as an atomized list of discriminatory decisions. They contend that the defendants' HIV-segregation policy violates federal anti-discrimination statutes in various ways: inter- and intra-facility segregation; discriminatory criteria for assignment to work release; exclusion from food-service jobs and residential components of programs; disparate punishment; and public revelation of private medical information.

As to each of <u>these claims</u>, the named plaintiffs have a representative. Within Limestone and Tutwiler, the plaintiffs seek re-assignment to other dorms, such as the senior dorm and the honor dorm. ADOC also permits inmates to request transfers to other secure facilities for vocational programs or to be closer to family. <u>See</u>

Atchison Affidavit, Doc. No. 47-1, ¶ 13. Several of the named plaintiffs--Henderson, Robinson, Smith, and Douglas--are eligible for and seek transfer to another ADOC secure facility.

Regarding work-release, two named plaintiffs--Robinson and Douglas--are eligible based upon their security classifications but have been denied transfer because of defendants' allegedly discriminatory medical-clearance policy. Plaintiff Henderson contends that defendants' refusal to lower his security classification and therefore assign him to work release is based on his HIV status. Additionally, plaintiff Smith, who was transferred to Decatur Work Release only recently, seeks assignment to a work-release facility closer to his family's home in Atlanta.

Turning to programs, the male plaintiffs seeking transfer to other prisons are excluded from programs unique to those institutions. The defendants' policy also precludes HIV+ inmates from working in the food-service

13

industry.  Plaintiff Hamlet, who has prior experience in this field, is currently housed at Decatur Work Release, but is barred from these jobs.  The plaintiffs' disparate-punishment claim is represented by Knox, who was disciplined for attempting to eat in the general population chow hall--which he is prohibited from doing solely because of his HIV status.  And the plaintiffs' unlawful-disclosure claim is satisfied by Hamlet, whose HIV+ status prevents him working in the food-service industry at Decatur Work Release.

Finally, the defendants object to the inclusion of female HIV+ prisoners in the class.  Currently, there are approximately 10 female prisoners diagnosed with HIV.  Defendants' Brief (Doc. No. 47) at 48-49.  The defendants contend that the female HIV+ population is too small and their circumstances too unique to warrant inclusion in the plaintiffs' class.

To be sure, Tutwiler's status as the sole secure facility for women in Alabama changes the analysis to an

extent.   But HIV+ female inmates, like their male
counterparts at Limestone, are segregated within
Tutwiler.   They are also limited to one of two work-
release centers.   Thus, female HIV+ prisoners face the
same allegedly discriminatory policy as male inmates--
only the institutional context is different.

The court recognizes that the defendants contend that
the plaintiffs' challenge to the defendants' overall
'policy,' rather than to each program, is not actionable.
With this opinion, the court does not resolve the issue
of whether the plaintiffs' approach is appropriate.   The
court has merely assumed such, and, if the plaintiffs'
claims lack merit, they will lose.


B.  Commonality and Typicality

The "'commonality and typicality requirements of Rule
23(a) tend to merge.'"   <u>Wal-Mart Stores, Inc. v. Dukes</u>,
131 S. Ct. 2541, 2552 n.5 (2011) (quoting <u>General
Telephone Co. of the Southwest v. Falcon</u>, 457 U.S. 147,

157 n.13 (1982)).  Both inquiries ask "'whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  Id.

Here, the plaintiffs claim that they have the same disability and that the defendants' HIV segregation policy affects them in similar ways.  For example, every plaintiff is barred from transferring within their secure facility and all male plaintiffs are prohibited from applying to transfer to another secure facility. Plaintiffs eligible for work release--both male and female--are subject to the same allegedly discriminatory medical-clearance policy and may only transfer to one work-release facility.

The factual differences between the plaintiffs are minor and do not rise to the level to defeat class certification.  See Kornberg v. Carnival Cruise Lines,

Inc., 741 F.2d 1332, 1137 (11th Cir. 1984) ("A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. ... A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class."). Most significantly, the named plaintiffs' legal claim--that the defendants are engaged in disability discrimination in violation of the ADA and Rehabilitation Act--is identical to the class's claim. See Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000) (noting that "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences") (internal quotation marks omitted). Thus, the plaintiffs have satisfied the commonality and typicality requirements.

C.  Adequacy of Representation

Under Rule 23(a)(4), the adequacy-of-representation analysis "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181, 1189 (11th Cir. 2003) (internal quotation marks and citation omitted). The fact that the plaintiffs have satisfied the commonality and typicality requirements is strong evidence that they adequately represent the class. See Wal-Mart, 131 S. Ct. at 2552 n.5 (quoting Falcon, 457 U.S. at 157 n.13).

The defendants, however, foresee a potential conflict of interest between the named plaintiffs and the class. The defendants point to certain living conditions and medical treatment received by HIV+ inmates pursuant to a now-expired consent decree. See Settlement Agreement, Leatherwood v. Campbell, No. CV-02-BE-2812-W (N.D. Ala.

18

Apr. 24, 2004) (Bowdre, J.). Specifically, the defendants note that Limestone's HIV-dorm is less crowded than other dorms and that HIV+ inmates receive better food than other prisoners. Mitchem Affidavit (Doc. No. 47-2) ¶¶ 3-4. The defendants assert that some HIV+ inmates may prefer their present accommodations to the right not to be discriminated against on the basis of a disability.

The defendants present an illusory choice. The Leatherwood consent decree addressed alleged Eighth Amendment violations in HIV healthcare at Limestone and expired in 2006. Notwithstanding any relief that may be ordered in this case and the expiration of the Leatherwood consent decree, the defendants are still obliged to provide HIV+ inmates a constitutionally adequate level of care. The Eighth Amendment and federal anti-discrimination statutes are not mutually exclusive.

Moreover, "the conflict must be more than merely speculative or hypothetical." 5 Moore's Federal Practice

19

§ 23.25[2][b][ii] (3d ed. 2011).  "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: <u>the conflict must be a 'fundamental' one going to the specific issues in controversy</u>." <u>Valley Drug</u>, 350 F.3d at 1189 (emphasis added).

The defendants speculate as to the scope of any relief and whether certain class members would prefer their current living conditions at Limestone over the free choice to transfer inter- and infra-facility.  The weighing of these options is premature and nebulous. Tellingly, the defendants' argument relies on cases in which the plaintiff class was conflicted because of <u>economic</u> winners and losers.  <u>See</u>, <u>e.g.</u>, Defendants' Brief (Doc. No. 47) at 62-63 (citing <u>Valley Drug</u>, 350 F.3d at 1189).  The defendants' alleged conflict is too ancillary and contingent to defeat class certification here, where the named plaintiffs allege class-wide discrimination.

Finally, the court finds that plaintiffs' counsel are qualified and experienced in class-action litigation involving prisons and, therefore, satisfy the adequacy requirement.

D. Rule 23(b)(2)

Rule 23(b)(2) certification is appropriate for plaintiffs seeking prospective relief for the class as a whole. The Rule "reflects a series of decisions involving challenges to racial segregation--conduct that was remedied by a single classwide order." Wal-Mart, 131 S. Ct. at 2558. This case fits squarely within Rule 23(b)(2)'s history. Indeed, this same class has been certified twice before by this court. See Onishea v. Hopper, 171 F.3d 1289, 1292 (11th Cir. 1999) (en banc); Edwards v. Alabama Department of Corrections, 81 F. Supp. 2d 1242, 1245 (M.D. Ala. 2000) (Thompson, J.).

Here, the plaintiffs seek a declaratory judgment that Alabama's HIV segregation policy violates federal anti-

discrimination laws and an injunction against its further enforcement.  The plaintiffs do not seek monetary relief. Given the plaintiffs' allegations of an overarching policy of disability discrimination and their request for prospective relief, Rule 23(b)(2)'s requirements have been met.


                              *   *   *

    Accordingly, it is ORDERED that:

    (1) Plaintiffs' motion for class certification (Doc. No. 2) is granted.

    (2) A plaintiff class is certified as consisting of all present and future prisoners diagnosed with HIV in the custody of the Alabama Department of Corrections.

    (3) The class representatives are Louis Henderson, Dana Harley, Darrell Robinson, Dwight Smith, Albert Knox, James Douglas, Alqadeer Hamlet, and Jeffery Beyer.

    DONE, this the 30th day of August, 2012.


                              /s/ Myron H. Thompson
                         UNITED STATES DISTRICT JUDGE