# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| **LOUIS HENDERSON, et al.,** | |
| Plaintiffs, | |
| v. | Civil Case No. 2:11cv224-MHT |
| **KIM THOMAS, Commissioner, Alabama Department of Corrections, et al.,** | |
| Defendants. | |

## JOINT MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF PROPOSED SETTLEMENT

Having reached a proposed settlement of the remaining issues in this case counsel for the Parties hereby request, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that the Court grant preliminary approval of the terms of the proposed settlement; approve the Parties' proposed Notice to the Class; direct notice to the class; and set a date for a fairness hearing.  The grounds for this Motion are set forth below.

On March 28, 2011, Plaintiff Class filed the instant class action lawsuit alleging that the ADOC's policies regarding prisoners with HIV violated the rights of the Plaintiff Class under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.  On December 21, 2012, following a five-week, non-jury trial in September-October 2012, this Court entered an Opinion and Judgment, holding

that "the ADOC's HIV-segregation policy violates the ADA," and that it would hold further proceedings regarding the work release policy. The Court directed the Parties to meet and attempt to agree upon a remedy.

In June 2013, the parties engaged in mediation before Magistrate Judge Capel. On July 30, 2013, the Parties reached a settlement agreement to resolve all remaining claims in the case. The proposed settlement includes a primary agreement enforceable in federal court, attached hereto as Exhibit A-1, and a private agreement enforceable in state court, attached hereto as Exhibit A-2. Taken together, the agreements eliminate HIV segregation throughout the ADOC system, and establish a timeline and process for integrating prisoners with HIV into all ADOC facilities by the end of 2014. The proposal eliminates all HIV-specific work release criteria. The proposal provides for monitoring for compliance by Plaintiffs. Further, the proposal settles attorneys' fees and expenses through the date of court approval of the settlement.

Rule 23(e), Fed. R. Civ. P., provides that the claims of a certified class may be settled or compromised only with the Court's approval; that the court must direct notice in a reasonable manner to all class members who would be bound by the proposal; that class members must be given the opportunity to object to the proposal; and that the court may approve the proposal only after a hearing and on finding that it is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e); *see*

*generally Bennett v. Behring Corp.*, 737 F.2d 982, 985-6 (11th Cir. 1984); *Laube v. Campbell*, 333 F. Supp. 2d 1234, 1238 (M.D. Ala. 2004).

Before sending notice to the class, courts usually approve the settlement preliminarily. *Manual for Complex Litigation, Fourth* § 21.632 (2004); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 785-6 (3d Cir. 1995). This initial determination of fairness can be made on the basis of information already known to the Court. *Manual for Complex Litigation, Fourth* § 21.632 (2004). Here, the background to the proposed settlement is well-known to the Court, and preliminary approval of the settlement is appropriate.

Plaintiffs have appended to this Motion a proposed Notice to class members, *See* Ex. B. Plaintiffs believe the attached Notice adequately summarizes the key provisions of the proposed settlement and adequately advises the class members how to lodge objections. Plaintiffs propose that copies of the Notice and proposed settlement be provided to class members by hand-delivery, and Defendants have agreed to make such delivery.

The Parties ask that the Court set this matter for a hearing pursuant to Rule 23(e) (2).  The Parties submit herewith as Exhibit C a proposed Order regarding notice to the class, procedures for objections, and hearing.

Respectfully submitted on this 1st day of August, 2013:

/s/ Margaret Winter

Margaret Winter (DC Bar No.174805)
mwinter@npp-aclu.org
Carl Takei (DC Bar No. 987672)
ctakei@npp-aclu.org
THE NATIONAL PRISON PROJECT OF THE
ACLU FOUNDATION, INC.
915 15th Street, N.W., Seventh Floor
Washington, D.C. 20005
Tel. (202) 393-4930; fax (202) 393-4931

Rose Saxe (SDNY No. RS 0463)
rsaxe@aclu.org
Amanda C. Goad (SDNY No. GO 6678)
agoad@aclu.org
THE AIDS PROJECT OF THE ACLU
FOUNDATION, INC.
125 Broad Street, Eighteenth Floor
New York, N.Y. 10004
Tel. (212) 549-2500; fax (212) 549-2650

Robert D. Segall (ASB-7354-E68R)
segall@copelandfranco.com
COPELAND, FRANCO, SCREWS & GILL, P.A.
P.O. Box 347
Montgomery, Alabama  36101-0347
Tel. (334) 834-1180; fax (334) 834-3172

/s/ William R. Lunsford

William R. Lunsford
David B. Block
Mitchell D. Greggs
Janine A. McKinnon
**MAYNARD, COOPER & GALE, P.C.**
655 Gallatin Street
Post Office Box 18668 (35804-8668)
Huntsville, Alabama 35801-4936
Telephone: (256) 551-0171
Facsimile: (256) 512-0119
blunsford@maynardcooper.com
dblock@maynardcooper.com
mgreggs@maynardcooper.com
jmckinnon@maynardcooper.com

Anne Adams Hill
Scott Lee Rouse
Elizabeth Sees
**ALABAMA DEPARTMENT OF CORRECTIONS**
Legal Division
301 South Ripley Street
Montgomery, Alabama 36104

# Exhibit "A-1"
## Settlement Agreement

# SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT is entered into as of this 30th day of __JULY__ , 2013, by and between KIM T. THOMAS, in his official capacity as Commissioner of the Alabama Department of Corrections (hereinafter, the "Alabama Department of Corrections" or "ADOC") and DANA M. HARLEY, JEFFERY G. BEYER, and ALQADEER HAMLET, through counsel and in their capacities as class representatives under Rule 23(b) of the Federal Rules of Civil Procedure, by and on behalf of all current and future HIV-positive prisoners incarcerated in facilities operated by the Alabama Department of Corrections (the "Plaintiff Class" and together with the ADOC, the "Parties").

## I.   RECITALS

WHEREAS, the Parties are presently involved in a lawsuit related to the conditions of imprisonment of the Plaintiff Class within the State of Alabama styled as Louis Henderson, et al. v. Kim Thomas, et al., Case No. 2:11-cv-00224-MHT, In the United States District Court for the Middle District of Alabama, Northern Division (the "Litigation");

WHEREAS, the Plaintiff Class filed this class action lawsuit on March 28, 2011, and, as set forth in the pleadings, alleged that the ADOC violated the rights of the Plaintiff Class under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act;

WHEREAS, on December 21, 2012, the Court entered an Opinion and Judgment, holding that "except as to the work-release policy, the ADOC's HIV-segregation policy violates the ADA," and that it would hold further proceedings regarding the work release policy, and directed the Parties to meet and attempt to agree upon a remedy;

WHEREAS, the Parties have conducted mediation before United States Magistrate Judge Wallace Capel since February 2013 in a good faith effort to resolve the remaining issues in this case, reached an agreement for resolving these issues, and enter into this Agreement for that purpose;

WHEREAS, the Parties desire to avoid the burdens and risks of further litigation and, for this reason, have agreed to settle the Litigation as stated below;

WHEREAS, the Parties desire to fully and finally settle the Litigation and enter into this Agreement in order to completely resolve all disputed Class claims asserted in the Litigation;

WHEREAS, it is the intention of the Parties that this Agreement shall become effective when the proposed Stipulated Order (the "Stipulated Order", attached hereto as **Exhibit A**) is, in substance, approved and adopted by the Court; and

WHEREAS, it is the Parties' intention that the terms of this Agreement will remedy the ADOC's prior policies regarding HIV-positive inmates, as described in the Court's Opinion, which, according to the Court's Opinion, violate the ADA.

## II.    TERMS AND CONDITIONS

NOW THEREFORE, in exchange for the mutual promises contained herein, and for other valuable consideration, the Parties collectively agree as follows:

A.    **DISCONTINUATION OF SEPARATE HIV HOUSING**. Pursuant to the terms and conditions set forth in this Agreement and the process identified herein, the ADOC will discontinue its policy and practice of housing inmates who have HIV separately from inmates who do not have HIV.  HIV-positive inmates will be housed in general population housing together with non-HIV-positive inmates, except for those HIV-positive inmates assigned to designated housing units for medical, administrative, disciplinary, protective, and/or security reasons.

2

The ADOC may house HIV-positive inmates in administrative or disciplinary segregation, or protective custody, on the same basis as prisoners who do not have HIV.

**B.    REVISION OF ALL HIV-SPECIFIC POLICIES, PROTOCOLS, REGULATIONS AND STANDARD OPERATING PROCEDURES**. The ADOC will revise and replace the existing rules, policies, protocols, regulations and standard operating procedures specifically applicable to the HIV-positive population.  In order to implement the remedial plan described herein, the rules, policies, protocols, regulations and standard operating procedures which shall be eliminated, revised and/or amended are the following:

## TO BE REVISED:

1.    Exh. J-1 - Alabama Department of Corrections, Office of Health Services, HIV Serology in Determining Special Housing Needs (revised June 2011) (ADOC008886-8889);

2.    Exh. J-6 - Alabama Department of Corrections, Office of Health Services, Medical Coding Assessment Guide (revised Feb. 2011) (ADOC008893);

3.    Exh. J-8 - Alabama Department of Corrections Classification Manual (revised Oct. 2010) (ADOC008663-782; see ADOC008720 & ADOC008738);

4.    Exh. J-32 - A.D.O.C. – Office of Health Services – Medical / Dental and Mental Health Services Code Match Map (recent review 03/25/10) (ADOC008783 – 8786);

5.    Exh. J-33 - Alabama Department of Corrections – Office of Health Services: Medical Health Care Code "6," Subset "A – Z" (revised Mar. 2010) (ADOC008787);

6.    Exh. J-36 - ADOC – Office of Health Services Medical Coding Assessment Guide (revised Feb. 2011) (ADOC008893);

7.    Exh. J-48 - Inmate orientation information and forms (ADOC009303 – 9317; see ADOC009306-07, ADOC009313, ADOC009315);

8.     Exh. J-63 - Alabama Department of Corrections, Office of Health Services, Division Manual, Policies and Procedures, January 20, 2012 (ADOC17740 – 18038; see ADOC017769, 17773, 17795, 17846, 17881 and 17985); and

9.     Exh. J-64 - Limestone Correctional Facility Standard Operating Procedure C-29, Residential Treatment Unit (ADOC18838 - 18845).

### TO BE ELIMINATED:

10.     Exh. J-2 - Alabama Department of Corrections, Julia Tutwiler Prison for Women, Standard Operating Procedure No. 12-3: Inmates with Human Immunodeficiency Virus (HIV)/ Acquired Immune Deficiency Syndrome (AIDS) (Nov. 28, 2011) (ADOC009036-40);

11.     Exh. J-3 - Alabama Department of Corrections, Office of Health Services, Information for HIV+ Inmates to be Considered for or Housed at Work Release (revised May 2011) (ADOC008813);

12.     Exh. J-7 - Alabama Department of Corrections, Limestone Correctional Facility, Standard Operating Procedure E-25: Inmates with Human Immunodeficiency Virus (HIV)/Acquired Immune Deficiency Syndrome (AIDS) (May 8, 2008) (ADOC018855-61);

13.     Exh. J-34 - A.D.O.C. Inmate With HIV + Serology Health Screening and Criteria Assessment Tool; Transfer Consideration Specific to the Montgomery Work Release Program (Female) (revised Nov. 2011) (ADOC008809 – 8810);

14.     Exh. J-35 - A.D.O.C. Inmate With HIV + Serology Health Screening and Criteria Assessment Tool; Transfer Consideration Specific to the Decatur Work Release Program (Male) (revised Nov. 2011) (ADOC008811 – 8812);

15.     Exh. J-49 - Limestone Correctional Facility Post Orders, Dormitory C Cubicle Officer (ADOC009318 – 9339);

16.     Exh. J-65 - Limestone Correctional Facility Standard Operating Procedure C-55, Leatherwood Settlement (ADOC18846 - 18849).

To the extent that the ADOC elects to adopt any additional policy not specifically referenced in this Agreement which is applicable only to HIV-positive inmates,

then the ADOC shall provide counsel for the Plaintiff Class with a copy of the proposed policy at least 21 days prior to adoption of any such policy. Counsel for the Plaintiff Class may submit any comments, questions or proposed revisions to counsel for the ADOC within 14 days after receipt of such policy. To the extent that the Parties cannot reach a consensus on any such proposed policy during the term of this Agreement, such disagreement shall be submitted to Magistrate Judge Wallace Capel for resolution consistent with the Dispute Resolution provisions contained herein.

The ADOC will maintain the discretion and authority to revise its policies and procedures consistent with the terms and conditions of this Settlement Agreement and the ADOC specifically agrees to revise policies and procedures which will address (a) the confidentiality of medical information pertaining to all inmates consistent with the requirements of applicable law, and (b) the adoption of revised Medical Coding criteria which result in the elimination of the automatic classification of prisoners with HIV with one specific Medical Code.

The ADOC will provide Counsel for the Plaintiff Class a copy of any and all revised policies on or before September 1, 2013. Counsel for the Plaintiff Class will provide any suggested further revisions on or before October 1, 2013. Additionally, the ADOC will provide counsel for the Plaintiff Class a copy of the new policy pertaining to the Acute Care Unit at Limestone Correctional Facility on or before July 1, 2013. To the extent there is any disagreement over such policies that is not rectified by discussions between the Parties, any such disagreement shall be subject to the dispute-resolution provisions herein.

C.   **ACUTE CARE UNIT**. The ADOC will maintain an Acute Care Unit at Limestone Correctional Facility for housing inmates whose individual medical condition, as determined by the HIV Specialist or another authorized medical professional, justifies special housing assignments in a setting that provides acute

care. If a prisoner with HIV has been assigned to administrative or disciplinary segregation, but the HIV Specialist or another authorized medical professional determines it is in the inmate's medical interest to be housed in the close observation setting, the inmate may be housed in segregation within the Acute Care Unit.

D.    **NO ISOLATION AT INTAKE**. The ADOC will cease the practice of isolating newly-diagnosed HIV-positive inmates at Julia Tutwiler Prison for Women and Kilby Correctional Facility on or before August 1, 2013. Upon cessation of this practice, any inmate who receives a positive ELISA test result for HIV will remain housed in the receiving unit at Julia Tutwiler Prison for Women or Kilby Correctional Facility, unless such inmate must be housed in a separate housing area due to disciplinary, protective or other security-related reasons or because an authorized medical provider determines that the inmate needs to be housed separately for medical reasons. The ADOC will inform counsel for the Plaintiff Class in writing when they have ended the prior intake process for HIV-positive inmates at Julia Tutwiler Prison for Women and Kilby Correctional Facility.

E.    **PRE-TRANSFER PREPARATIONS**. Before any HIV-positive inmate is transferred to any facility under this revised housing plan, the following preparatory steps will be completed:

1.    **Initial Written Directive from ADOC Commissioner**. At the outset of the implementation of this proposed remedial plan, the ADOC Commissioner will issue three separate written directives to (1) all classification staff, (2) senior security staff (*i.e.* wardens, captains, and above) and other security staff, and (3) all inmates, notifying these individuals of the changes in the ADOC's housing practices related to HIV-positive inmates, as described below. The written directives will express the ADOC Commissioner's commitment to complying with

6

the Court's judgment and ending the prior policies of the ADOC as it relates to prisoners with HIV. The directives to staff and inmates will also express commitment to ensuring that these individuals receive further education as to the current state of science relative to HIV and AIDS as well as an explicit directive that expresses ADOC's zero tolerance of any prisoner threatening, abusing or undertaking acts of violence or abuse against any other inmate because of his or her HIV status. The directives to staff will include a mandate from the Commissioner that all ADOC personnel must respect the confidentiality of the medical conditions of all inmates, including the HIV-positive status of certain inmates, and that the intentional disclosure of any inmate's medical status, including an HIV-positive diagnosis, may constitute a violation of ADOC policy and will result in consideration of disciplinary action. The Directives are attached to this Agreement as **Exhibit B**.

    2.    **Training of Correctional Staff by AATEC**. The ADOC will enter into a Memorandum of Understanding with the Alabama AIDS Training and Education Center ("AATEC") to provide correctional staff with training sessions throughout the system. ADOC and AATEC will agree on the duration of the training sessions. Training will be mandatory for all staff on all shifts.

    Topics to be covered in this training will include the matters identified in the memorandum by Richard Meriwether with AATEC which is attached hereto as **Exhibit C**, as well as an additional training segment utilized by AATEC related to HIV stigma. Training sessions will include opportunities for staff members to ask questions. The ADOC will continue to offer basic training related to communicable diseases and "universal precautions" through training offered to correctional officer candidates at the Alabama Corrections Academy. The ADOC will incorporate a segment related to HIV prejudice and stigma within the current Academy curriculum.

3.      **Education Training for Inmates**.  The ADOC staff (together with representatives of the ADOC's independent medical provider) will provide educational training to inmates at each of the subject institutions (excluding Decatur Work Release and Montgomery Women's Center where such training has been previously provided).  All individuals conducting training will be at least registered nurses licensed in the State of Alabama.  This training will occur first at Julia Tutwiler Prison for Women.  The materials and lesson plans to be utilized in the training of inmates will relate to HIV and other sexually transmitted infections ("STIs"), and will be mutually agreed upon by the Parties prior to the commencement of training.  To the extent there is any disagreement regarding these materials and plans that is not rectified by discussions between the Parties, any such disagreement shall be subject to the dispute-resolution provisions herein. Beginning on or before June 1, 2014, the ADOC will provide the Inmate Training Handouts on HIV and other STIs to all incoming inmates.

4.      **Training of Medical Staff by AATEC**.  Each clinician who is expected to provide primary care at facilities housing HIV-positive inmates will engage in a mandatory preceptorship with UAB's 1917 Clinic.  The hours of training devoted by each medical professional will vary depending upon their medical training, education and/or experience as well as the expected tasks assigned to them related to HIV-specific care.  To the extent necessary, the ADOC's independent medical provider may identify additional laboratory personnel who may receive training to ensure the accuracy of laboratory results for testing specific to HIV.

5.      **Installation of Additional Telemedicine Units**.  Before the reassignment of HIV-positive inmates to any of the subject facilities, the ADOC will install telemedicine units (_i.e._ videoconferencing hardware) at facilities where such telemedicine units are necessary for the delivery of HIV-specific consultation.

6. **Training of Classification Staff**.  In light of the significant changes to the overall classification system, including the expanded number of facilities at which HIV-positive inmates will be housed and alterations to the criteria for work release housing, additional training of ADOC Classification staff will be necessary and will be conducted internally.  As part of this training, ADOC will train classification personnel that an inmate's HIV status must not be documented in his or her classification file, except when such information must necessarily be included as part of an inmate's classification record (for example, when an inmate's HIV status is an element of his or her criminal conviction). During this training, classification personnel will also be instructed not to inquire into an inmate's HIV status.  The site classification personnel will attend the AATEC trainings provided to correctional staff at each facility.  Classification personnel situated outside of individual ADOC facilities are not required to receive any such training under this Agreement.

7. **Reclassification of HIV-Positive Inmates**.  All HIV-positive inmates will undergo a reclassification under the revised housing policy pursuant to the existing ADOC Classification Manual.  The ADOC will classify each inmate without regard to his or her HIV-positive status, consistent with ADOC's classification policies and procedures.  No inmate will be given authority to choose or direct his or her placement at any particular facility.  Any documentation produced during the reclassification process will conform to the instructions provided to classification personnel during the training sessions identified above in Section II.E.6.  Consistent with the terms of the ADOC Classification Manual (including Section 4.4.3 thereof), the reclassification of HIV-positive inmates under this Agreement may constitute a "lateral transfer" and, as such, the ADOC may consider an inmate's request for assignment to "an institution that is closer to home or for program participation."

8.    **Reassignment to Begin at Julia Tutwiler Prison for Women and Kilby Correctional Facility**.  The reassignment of HIV-positive inmates will begin at Julia Tutwiler Prison for Women and Kilby Correctional Facility and that initial reassignment of inmates within these facilities will be utilized to identify any actual or potential issues which may result from these housing reassignments to prevent any further issues at any other locations.  Beginning on August 1, 2013, newly arriving female HIV-positive inmates will be processed together with non-HIV-positive female inmates through the intake / receiving process at Julia Tutwiler Prison for Women, which includes initial assignment to the receiving dorm within Tutwiler.

Beginning on September 13, 2013, newly arriving male HIV-positive inmates will be processed together with non-HIV-positive male inmates through the intake / receiving process at Kilby Correctional Facility, which includes initial assignment to the receiving dorm within Kilby.  Upon completion of the intake / receiving process, male HIV-positive inmates will be transferred to the Permanent Party dorm once sufficient beds are available, on the same basis as other inmates. These newly arriving male HIV-positive inmates assigned to the Permanent Party dorm will be subject to reassignment beginning on June 1, 2014.

F.    **IMPLEMENTATION SCHEDULE**   The Parties agree that the schedule for implementation of the matters set forth in this Agreement shall be as follows:

| | |
|---|---|
| July 30, 2013 | Complete Security Staff and Inmate Training at Tutwiler and Kilby |
| July 30, 2013 | Complete Training for Classification Staff at Tutwiler and Kilby |
| July 30, 2013 | Complete Reclassification of Female Inmates at Tutwiler |

10

| | |
|---|---|
| August 1, 2013 | Reassign Female Inmates within Tutwiler |
| August 1, 2013 | Begin Assigning Incoming HIV-Positive Inmates to Receiving Dorms at Tutwiler and Kilby |
| September 3, 2013 | HIV-Positive Female Inmates first eligible for assignment to Birmingham Work Release |
| September 3, 2013 | ADOC issues Commissioner's Directives |
| September 13, 2013 | Begin Assignment of Incoming Male HIV-Positive Inmates at Kilby to Permanent Party Dorms |
| April 1, 2014 | Complete Installation of Telemedicine Equipment |
| May 1, 2014 | Complete Training for All Correctional and Medical Personnel and Inmates |
| June 1, 2014 | Begin Reassignment of Male HIV-Positive Inmates at Limestone |
| November 1, 2014 | Complete Reassignment of All HIV-Positive Inmates |

To the extent that the ADOC does not complete its specific obligations (as defined in this Agreement) within the timeframes set forth above, the Parties reserve the right to mutually agree in writing to an extension of this Agreement and the Plaintiff Class reserves the right to request an extension of the term of this Agreement as well as the reporting requirements stated herein and/or to seek enforcement of the above timeframes.

G. **TRANSFER OF HIV-POSITIVE INMATES TO SELECT FACILITIES**. Pursuant to the terms of this Agreement, HIV-positive inmates will be eligible to be housed at the following facilities:

Birmingham Work Release

Decatur Work Release

Donaldson Correctional Facility

Fountain Correctional Facility

Limestone Correctional Facility

Loxley Work Release

Montgomery Women's Center

Tutwiler Prison for Women

Staton Correctional Facility

Bullock Correctional Facility

Elmore Correctional Facility

St. Clair Correctional Facility

Mobile Work Release

Red Eagle Work Center

Nothing in this Agreement should be construed as creating any obligation for the ADOC to house any inmates in any facilities operated by the ADOC within the State of Alabama other than the facilities listed above.  The Parties reserve the right to enter into a separate, independent agreement under which they may expand upon the number of facilities where HIV-positive inmates may be housed under the same circumstances as described in this Agreement.

H.   **WORK RELEASE CRITERIA**. The ADOC will implement and maintain a work release clearance policy and procedure which will be uniformly applied to all eligible inmates including all eligible HIV-positive inmates.  In other words, the ADOC will no longer maintain any separate or distinct medical clearance form or criteria for eligible HIV-positive inmates.  The work release

criteria will be utilized in the basic form and substance attached hereto as **Exhibit D**. The ADOC may revise and alter the attached work release criteria to the extent necessary so long as the work release criteria do not include any criteria applicable only to HIV-positive inmates.

     I.    **ARM BANDS**. Nothing contained in this Agreement shall prohibit the ADOC from utilizing arm bands to identify inmates housed in particular housing units in any ADOC facility, so long as the use of arm bands does not result in a direct or indirect means of disclosure of any inmate's HIV-positive status.

     J.    **ATTORNEYS' FEES AND EXPENSES**. The ADOC shall remit to counsel for the Plaintiff Class payment in the amount of One Million Three Hundred Thousand and No/100 ($1,300,000.00), which shall constitute payment for any and all attorneys' fees and expenses incurred, charged and/or otherwise generated by counsel for the Plaintiff Class from the inception of the Litigation through the date of entry of the Stipulated Order. The Parties further agree that the above-referenced sum may be paid by the ADOC in three separate installment payments as follows: $450,000 within 30 days after entry of the Stipulated Order, $450,000 on or before June 2, 2014, and $400,000 on or before November 3, 2014. The Parties acknowledge and agree that the payments reflected in this paragraph constitutes payment in full of attorneys' fees and expenses claimed by the Plaintiff Class and/or its counsel and/or owed by all Defendants in the Litigation through the date of the entry of the Stipulated Order. The Plaintiff Class and its counsel hereby voluntarily, completely and unconditionally waive any and all right, claim and/or entitlement to the recovery of any monies of any kind from any Defendant in this Litigation for any and all attorneys' fees and/or expenses incurred, charged and/or otherwise generated by counsel for the Plaintiff Class from the inception of the Litigation through the date of entry of the Stipulated Order.

The Parties acknowledge that, upon the termination or expiration of this Agreement pursuant to Section III.D. below, and from time to time prior to such termination, the Plaintiff Class may petition the Court for an award of attorneys' fees and expenses incurred by counsel for the Plaintiff Class for the period of time beginning on the date of the entry of the Stipulated Order and continuing through the date of the termination or expiration of this Agreement, or a subperiod thereof. Plaintiff Class and its counsel specifically agree that they shall charge an hourly rate of $195.00 per hour for attorneys and $100.00 per hour for non-attorneys for any fees incurred following the entry of the Stipulated Order and that they shall not seek reimbursement for any fees, retainers, costs, charges or expenses of any kind incurred by any expert retained by the Plaintiff Class or its counsel for work done or tasks completed during the term of this Agreement. The ADOC and the Defendants reserve their rights to object to and/or oppose any petition or request by the Plaintiff Class and/or its counsel for any fees or expenses which may be sought after the date of the execution of this Agreement. However, the ADOC and the Defendants agree that they will not assert in any such objection or opposition that the hourly rates agreed upon above are not reasonable.

K.    **ACCESS TO INMATE RECORDS**. Counsel for the Plaintiff Class will have access to copies of the medical and/or institutional records of members of the Plaintiff Class.  With respect to inmate medical records, counsel for the Plaintiff Class shall provide the release of medical information forms typically used by the ADOC and its independent medical provider, at the time of the record request.  Counsel for the Plaintiff Class will pay reasonable copying charges for such records not to exceed $0.50 per page.

L.    **REPORTING REQUIREMENTS**.

1.    **Inmate Housing Reports:** On May 15, 2014, August 15, 2014, November 17, 2014, February 13, 2015 and June 15, 2015, the ADOC will report to counsel for the Plaintiff Class:

    a.    The name, AIS Number, assigned facility, custody level, medical code, mental health code, and EOS date for each member of the Plaintiff Class.  The first time each inmate appears on this report, the ADOC will also report his or her county of commitment;

    b.    the Names and AIS Numbers of HIV-positive Inmates assigned to the Acute Care Unit;

    c.    the Number of HIV-positive Inmates assigned to the Acute Care Unit who are housed in disciplinary or administrative segregation;

    d.    the Number of HIV-positive Inmates assigned to the Acute Care Unit who are housed in the infirmary at Limestone Correctional Facility;

    e.    the Number of HIV-negative Inmates assigned to the Acute Care Unit who are housed in the infirmary at Limestone Correctional Facility; and

    f.    the Number of HIV-positive Inmates assigned to the Acute Care Unit who are housed in a general population dormitory at Limestone Correctional Facility.

2.    **Medical Training Reports:** On October 1, 2013, February 3, 2014 and June 2, 2014, the ADOC will report to counsel for the Plaintiff Class:

    a.    the Titles of medical contractor personnel who have completed the 1917 Clinic preceptorships referenced in this Agreement, and the dates of those preceptorships; and

b.      the Titles of any medical personnel who are scheduled to complete preceptorships under the terms of this Agreement but have not yet done so.

3.      **Inmate & Staff Training Reports:** On October 1, 2013, February 3, 2014 and June 2, 2014, the ADOC will report to counsel for the Plaintiff Class:

a.      Locations and dates that HIV training sessions referenced in this Agreement took place since June 15, 2013;

b.      Approximate number of attendees at each session; and

c.      The number of classification staff and correctional staff who have yet to be trained at the facilities where trainings for their respective groups have already taken place.

Pursuant to the Health Insurance Portability and Accountability Act (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (1996), this Agreement, when entered by the Court as an Order, shall expressly authorize the ADOC and any health care provider, health plan, or other covered entity that contracts with ADOC to periodically provide to counsel for the Plaintiff Class the names and AIS numbers of all prisoners with HIV who are assigned to the Acute Care Unit at Limestone Correctional Facility, even if such production would result in the release of protected health information of such prisoners.  The Parties shall be expressly prohibited from using or disclosing the protected health information obtained pursuant to this order for any purpose other than this action.  Further, the Parties shall be ordered to either return to the covered entity from whom or which such protected health information was obtained, or to destroy the protected health information (including all copies made), immediately upon expiration of this Agreement.  *See* 45 C. F. R. §§ 163.502(b); 164.512(e)(1)(v).  The Stipulated

16

Order setting forth these terms shall expressly state that it is and shall constitute an "order of a court or administrative tribunal" pursuant to the Privacy Rule, 45 C.F.R. § 164.512(e)(1)(i), promulgated under the Health Insurance Portability and Accountability Act (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (1996). "Protected health information" and "covered entities" have the meanings set forth in 45 C.F.R. § 160.103.

M. **NOTIFICATION REGARDING MEDICATION COMPLAINTS**. To the extent that Counsel for the Plaintiff Class receives any report from any member of the Plaintiff Class that he or she is not receiving his or her HIV-related medications as prescribed, such complaints may be initially submitted via electronic mail to the following e-mail address: anne.hill@doc.alabama.gov and must be followed with a copy sent via United States Mail to: Anne Adams Hill at the following mailing address: Anne Adams Hill, Alabama Department of Corrections, Post Office Box 301501, Montgomery, Alabama 36130-1501.

N. **PLACEMENT OF AGREEMENT IN LAW LIBRARIES**. The ADOC will place a copy of this Agreement in the law library at every ADOC facility where one exists.

### III.   OTHER TERMS AND CONDITIONS

A. **NO MONETARY COMPENSATION**. The Parties acknowledge that, excluding the payment of attorneys' fees and costs to Plaintiffs' Counsel in this action, nothing contained in any final agreement and/or any stipulated final order creates, mandates or constitutes any obligation of any Defendant, the State of Alabama and/or the Alabama Department of Corrections to compensate, pay or otherwise provide any monetary payment of any kind to any inmate formerly housed, currently housed or housed in the future in any correctional facility operated by or at the direction of the Alabama Department of Corrections.

Moreover, nothing in any final agreement or any final stipulated order creates any basis for any purported or actual Class Member to seek any financial recovery or monetary benefit of any kind from any Defendant, the State of Alabama and/or the Alabama Department of Corrections.  Nothing in this agreement is intended to curtail the rights of individual prisoners with HIV to bring lawsuits for violations of the Americans with Disabilities Act or the Rehabilitation Act, which are not otherwise barred for reasons unrelated to this Agreement.

B.   **NO APPEAL.**  All Parties shall waive all rights to seek any appeal from and/or appellate review of any stipulated final order entered by the Court.

C.   **COURT'S RETENTION OF JURISDICTION TO ENFORCE THE AGREEMENT.**   The Parties agree that they will jointly submit this Settlement Agreement to the Court with a request that the Court (1) provide for appropriate notice to the class, submissions of objections, and hearing, pursuant to Rule 23(e), F. R. Civ. P.; (2) following hearing, adopt the Settlement Agreement in the form of a Stipulated Order, if the Court deems the proposal fair and adequate; (3) administratively close the case in a manner consistent with the normal procedures of the United States District Court for the Middle District of Alabama, and (4) retain jurisdiction to enforce the Settlement Agreement and its Judgment.

D.   **EXPIRATION OF SETTLEMENT AGREEMENT.**   Unless otherwise agreed in writing by the Parties or extended by Order of the Court or unless a motion to extend the term of the Agreement is then pending, this Agreement shall expire by its own terms at 12:00 p.m. (Central Daylight Savings Time) on June 30, 2015.  In the event that any such pending motion identified above (as of June 30, 2015) is denied, this Agreement shall expire on the date on which such motion is denied by the Court.

E.   **NO WAIVER OF PRIVILEGE.**   Nothing in this Agreement or undertaken pursuant to this Agreement constitutes or is intended to constitute a waiver of any applicable privilege of any kind.

F.   **STIPULATION PURSUANT TO 18 U.S.C. § 3626(A).**   The Parties stipulate and agree, and will jointly ask the Court to find, that the prospective relief in this Stipulated Agreement is narrowly drawn, extends no further than necessary to correct the violations of federal rights as alleged by the Plaintiff Class in the Second Amended Complaint, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system. Accordingly, the Parties agree and represent that the Agreement complies in all respects with the provisions of 18 U.S.C. § 3626(a). Nothing contained in this Settlement Agreement shall be construed as an admission of any kind by the State of Alabama, any Defendant and/or any agent, employee, officer and/or representative of the Alabama Department of Corrections, except as expressly stated in this document and the Stipulated Order.   The Parties acknowledge and understand that the ADOC has elected to enter into this Settlement Agreement based upon the particular and individualized facts and circumstances present at the time of execution of this Settlement Agreement.  The Parties further agree that this document shall not be construed as an admission with respect to any particular individual and that the ADOC is entering into this agreement with the certified Plaintiff Class as a whole and not any individual member of the Plaintiff Class.

G.   **DISPUTE RESOLUTION.**   In the event of any dispute related to the terms and conditions of any final stipulated order and/or any final agreement between the Parties, the Parties shall submit to mediation before United States Magistrate Judge Wallace Capel prior to filing any document with the Court related to the alleged matters which are the subject of the dispute.  To the extent

that any party files any such motion or pleading with the Court without first submitting the matter to mediation, any such filing shall be dismissed *without prejudice* pending the outcome of mediation.

H. **CONFIDENTIALITY REGARDING MEDIATION PROCESS**. The Parties agree that no party shall make any public statement to any print or other media outlet of any kind regarding this Agreement until entry, in substance, of the Stipulated Order attached hereto as **Exhibit A**. Upon entry of the Stipulated Order, the Parties will issue the Joint Press Statement attached hereto as **Exhibit E**, and any Party may subsequently choose to issue any other public statement.

I. **MODIFICATION OF AGREEMENT**. The Agreement of the Parties and the terms of the Stipulated Order in this matter shall be limited to the terms set forth in the written agreement executed by the Parties. The Parties agree that neither party will seek any Court-ordered modification of the final agreement among the Parties or the stipulated final agreement, other than seeking to extend the term of the Agreement as set forth above. The Parties further agree that this Agreement may not be modified except in writing, signed by all Parties. In the event that the United States District Court for the Middle District of Alabama determines that alterations, amendments or changes to the terms and conditions of the final order are necessary, any such alterations, amendments or changes shall not be construed in any way as stipulated terms or conditions. All Parties reserve any and all rights or privileges that they may otherwise be entitled as a result of any revisions, alterations or amendments by the United States District Court for the Middle District of Alabama to any stipulation among the Parties.

J. **NO ADDITIONAL EMPLOYMENT OBLIGATIONS**. Nothing in the Parties' final agreement or the final stipulated order shall be construed in any way as creating any obligation of any kind upon any Defendant, the State of Alabama or the Alabama Department of Corrections to hire, retain and/or employ

any consultant, advisor, correctional officer, medical professional or other individuals of any kind, excluding the retention of AATEC.

K. **NO VIOLATION OF ANY OTHER APPLICABLE COURT ORDERS**. Nothing in the Parties' final agreement or the final stipulated order is intended to create any obligation or requirement which would result in the violation of any other currently existing order entered by a Court of competent jurisdiction.

L. **GOVERNING LAW AND SEVERABILITY**. This Settlement Agreement was entered into in the State of Alabama and shall be construed and interpreted in accordance with the laws of that state, other than issues on which federal law governs. Wherever possible, each provision of this Settlement Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. However, if any provision of this Settlement Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity; all remaining provisions shall be enforceable to the full extent permitted by law.

M. **MERGER**. This Settlement Agreement contains the entire understanding and agreement of the Parties with respect to the facilities identified above. Furthermore, all Parties acknowledge that there are no other representations and no other obligations that relate to the facilities identified above.

N. **COUNTERPARTS AND FACSIMILE SIGNATURES**. This Settlement Agreement may be executed in counterparts and all such counterparts when so executed shall together constitute the final agreement as if one document had been signed by all of the Parties. Any final agreement may be executed by facsimile copy and each signature thereto shall be and constitute an original signature, again as if all the Parties had executed a single original document.

**[SIGNATURE PAGES TO FOLLOW]**

**[SIGNATURE PAGE OF KIM T. THOMAS]**

_____
**KIM T. THOMAS, in his official capacity as
Commissioner of the Alabama Department of
Corrections**

STATE OF ALABAMA            )
                            )
COUNTY OF MONTGOMERY        )

    I, a Notary Public in and for said County in said State, hereby certify that **KIM T. THOMAS**, who is the Commissioner of the Alabama Department of Corrections, who is known to me, acknowledged before me on this day that, being informed of the contents of the above and foregoing, he executed the same voluntarily and in his official capacity on behalf of said agency of the State of Alabama.

    Give under my hand and official seal of office this 30th day of July , 2013.

_____
Notary Public
My commission expires: 6.18.2016

23

**[SIGNATURE PAGE OF PLAINTIFFS' COUNSEL]**

Dated: _07/31/13_

_(signature)_
MARGARET WINTER
Counsel for Plaintiff Class
ACLU National Prison Project

STATE OF _District of Columbia_ )
COUNTY OF _Washington_ )

    Before me, the undersigned, a Notary Public, personally appeared MARGARET WINTER whose name is signed to the foregoing instrument, and who is known to me, after being duly sworn on oath, deposed and acknowledged that, being informed of the contents of such instrument, he executed the same knowingly and voluntarily,

    Give under my hand and official seal of office this _31st_ day of _July_ ,2013,

_(signature)_
Notary Public
My commission expires: _8/31/2015_

**[NOTARY SEAL]**

VICTORIA MENDS-COLE
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires August 31, 2013

**[EXHIBIT A]**
**PROPOSED ORDER**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **LOUIS HENDERSON,** *et al.,* | |
| Plaintiffs, | |
| v. | Civil Case No. 2:11cv224-MHT |
| **KIM THOMAS, Commissioner, Alabama Department of Corrections,** *et al.,* | |
| Defendants. | |

## PROPOSED STIPULATED ORDER

This matter, having come before the Court on the Joint Motion for Approval of the Parties' Settlement Agreement and Entry of Stipulated Order, and the Court having entered an Opinion and Judgment on December 21, 2012, having further ordered the provision of adequate notice to members of the Plaintiff Class of the terms of this Order, having received and considered the written objections from members of the Plaintiff Class related to the contents of this Order, having held a fairness hearing on _____, 2013, commencing at --:--- a.m., having reviewed the filings, document, orders and/or admissible evidence which are currently filed of record with the Court, and having considered the arguments of counsel for the Parties and the other premises herein, it is hereby ORDERED and

ADJUDGED, for the reasons set forth in the Opinion accompanying this Order, as follows:

1.    **NOTICE PURSUANT TO RULE 23(e)(1).** Reasonable notice of the proposed settlement was provided to the Plaintiff class in the manner directed by the Court by separate Order.  Members of the Plaintiff class were then afforded an opportunity to submit comments and objections to the Court concerning the proposed settlement.  A fairness hearing pursuant to Fed. R. Civ. P. 23(e)(2) was held on _____, 2013, at which the Court heard arguments and testimony.

2.    **RULE 23(e)(2) FINDINGS.** The Court, having considered the arguments and testimony at the hearing, the comments submitted by class members, and the entire record in this case, concludes that the settlement is fair, reasonable, and adequate.

3.    **DISCONTINUATION OF SEPARATE HIV HOUSING.** Pursuant to the terms and conditions of this Order and the process identified herein, the ADOC will discontinue its policy and practice of housing inmates who have HIV separately from inmates who do not have HIV.  HIV-positive inmates will be housed in general population housing together with non-HIV-positive inmates, except for those HIV-positive inmates assigned to designated housing units for medical, administrative, disciplinary, protective, and/or security reasons.  The ADOC may house HIV-positive inmates in administrative or disciplinary

2

segregation, or protective custody, on the same basis as prisoners who do not have HIV.

4. **REVISION OR ELIMINATION OF ALL HIV-SPECIFIC POLICIES, PROTOCOLS, REGULATIONS AND STANDARD OPERATING PROCEDURES**. In order to implement the remedial plan described herein, the ADOC will revise and replace the existing rules, policies, protocols, regulations and standard operating procedures that are specifically applicable to inmates with HIV. The rules, policies, protocols, regulations and standard operating procedures which shall be eliminated, revised and/or amended are the following:

**TO BE REVISED:**

a. Exh. J-1 - Alabama Department of Corrections, Office of Health Services, HIV Serology in Determining Special Housing Needs (revised June 2011) (ADOC008886-8889);

b. Exh. J-6 - Alabama Department of Corrections, Office of Health Services, Medical Coding Assessment Guide (revised Feb. 2011) (ADOC008893);

c. Exh. J-8 - Alabama Department of Corrections Classification Manual (revised Oct. 2010) (ADOC008663-782; see ADOC008720 & ADOC008738);

3

d.      Exh. J-32 - A.D.O.C. – Office of Health Services – Medical / Dental and Mental Health Services Code Match Map (recent review 03/25/10) (ADOC008783 – 8786);

e.      Exh. J-33 - Alabama Department of Corrections – Office of Health Services: Medical Health Care Code "6," Subset "A – Z" (revised Mar. 2010) (ADOC008787);

f.      Exh. J-36 - ADOC – Office of Health Services Medical Coding Assessment Guide (revised Feb. 2011) (ADOC008893);

g.      Exh. J-48 - Inmate orientation information and forms (ADOC009303 – 9317; see ADOC009306-07, ADOC009313, ADOC009315);

h.      Exh. J-63 - Alabama Department of Corrections, Office of Health Services, Division Manual, Policies and Procedures, January 20, 2012 (ADOC17740 – 18038; see ADOC017769, 17773, 17795, 17846, 17881 and 17985); and

i.      Exh. J-64 - Limestone Correctional Facility Standard Operating Procedure C-29, Residential Treatment Unit (ADOC18838 - 18845).

**TO BE ELIMINATED:**

j.      Exh. J-2 - Alabama Department of Corrections, Julia Tutwiler Prison for Women, Standard Operating Procedure No. 12-3: Inmates with Human

4

Immunodeficiency Virus (HIV)/ Acquired Immune Deficiency Syndrome (AIDS) (Nov. 28, 2011) (ADOC009036-40);

      k.    Exh. J-3 - Alabama Department of Corrections, Office of Health Services, Information for HIV+ Inmates to be Considered for or Housed at Work Release (revised May 2011) (ADOC008813);

      l.    Exh. J-7 - Alabama Department of Corrections, Limestone Correctional Facility, Standard Operating Procedure E-25: Inmates with Human Immunodeficiency Virus (HIV)/Acquired Immune Deficiency Syndrome (AIDS) (May 8, 2008) (ADOC018855-61);

      m.    Exh. J-34 - A.D.O.C. Inmate With HIV + Serology Health Screening and Criteria Assessment Tool; Transfer Consideration Specific to the Montgomery Work Release Program (Female) (revised Nov. 2011) (ADOC008809 – 8810);

      n.    Exh. J-35 - A.D.O.C. Inmate With HIV + Serology Health Screening and Criteria Assessment Tool; Transfer Consideration Specific to the Decatur Work Release Program (Male) (revised Nov. 2011) (ADOC008811 – 8812);

      o.    Exh. J-49 - Limestone Correctional Facility Post Orders, Dormitory C Cubicle Officer (ADOC009318 – 9339);

p.    Exh. J-65 - Limestone Correctional Facility Standard Operating

Procedure C-55, Leatherwood Settlement (ADOC18846 - 18849).

**Procedure for Adoption of New Policies Not Listed Above.** To the extent

that the ADOC elects to adopt any additional policy not specifically referenced in

this Order which is applicable only to HIV-positive inmates, then the ADOC shall

provide Counsel for the Plaintiff Class with a copy of the proposed policy at least

21 days prior to adoption of any such policy.  Counsel for the Plaintiff Class may

submit any comments, questions or proposed revisions to counsel for the ADOC

within 14 days after receipt of such policy.  To the extent that the Parties cannot

reach a consensus on any such proposed policy during the term of this Order, such

disagreement shall be submitted to Magistrate Judge Wallace Capel for resolution

consistent with the Dispute Resolution provisions contained herein.

**Specific Amendments to the Policies Listed Above:** The ADOC will

maintain the discretion and authority to revise its policies and procedures

consistent with the terms and conditions of this Order and the ADOC specifically

agrees to revise policies and procedures which will address (a) the confidentiality

of medical information pertaining to all inmates consistent with the requirements

of applicable law, and (b) the adoption of revised Medical Coding criteria which

result in the elimination of the automatic classification of prisoners with HIV with

one specific Medical Code.

**Procedure for Revision of Policies Listed Above:** The ADOC will provide Counsel for the Plaintiff Class a copy of any and all revised policies on or before September 1, 2013. Counsel for the Plaintiff Class will provide any suggested further revisions on or before October 1, 2013.

**Procedure for Creation of New Acute Care Policy:** Pursuant to the Settlement Agreement, the ADOC has provided Counsel for the Plaintiff Class a copy of the new policy pertaining to the Acute Care Unit at Limestone Correctional Facility, and Counsel for the Plaintiff Class has provided suggested further revisions to the ADOC. To the extent there is any disagreement over such policies that is not rectified by discussions between the Parties, any such disagreement shall be subject to the dispute-resolution provisions herein.

5. **ACUTE CARE UNIT.** The ADOC will maintain an Acute Care Unit at Limestone Correctional Facility for housing inmates whose individual medical condition, as determined by the HIV Specialist or another authorized medical professional, justifies special housing assignments in a setting that provides acute care. If a prisoner with HIV has been assigned to administrative or disciplinary segregation, but the HIV Specialist or another authorized medical professional determines it is in the inmate's medical interest to be housed in the close observation setting, the inmate may be housed in segregation within the Acute Care Unit.

6.  **NO ISOLATION AT INTAKE**.  The ADOC will cease the practice of isolating newly-diagnosed HIV-positive inmates at Julia Tutwiler Prison for Women and Kilby Correctional Facility on or before August 1, 2013.  Upon cessation of this practice, any inmate who receives a positive ELISA test result for HIV will remain housed in the receiving unit at Julia Tutwiler Prison for Women or Kilby Correctional Facility, unless such inmate must be housed in a separate housing area due to disciplinary, protective or other security-related reasons or because an authorized medical provider determines that the inmate needs to be housed separately for medical reasons.  The ADOC will inform Counsel for the Plaintiff Class in writing when they have ended the prior intake process for HIV-positive inmates at Julia Tutwiler Prison for Women and Kilby Correctional Facility.

7.  **PRE-TRANSFER PREPARATIONS**.  Before any HIV-positive inmate is transferred to any facility under this revised housing plan, the following preparatory steps will be completed:

a.  <u>Initial Written Directive from ADOC Commissioner</u>.  At the outset of the implementation of this proposed remedial plan, the ADOC Commissioner will issue three separate written directives to (1) all classification staff, (2) senior security staff (i.e. wardens, captains, and above) and other security staff, and (3) all inmates, notifying these individuals of the changes in the ADOC's

housing practices related to HIV-positive inmates, as described below. The written directives will express the ADOC Commissioner's commitment to complying with the Court's judgment and ending the prior policies of the ADOC as it relates to prisoners with HIV. The directives to staff and inmates will also express commitment to ensuring that these individuals receive further education as to the current state of science relative to HIV and AIDS as well as an explicit directive that expresses ADOC's zero tolerance of any prisoner threatening, abusing or undertaking acts of violence or abuse against any other inmate because of his or her HIV status. The directives to staff will include a mandate from the Commissioner that all ADOC personnel must respect the confidentiality of the medical conditions of all inmates, including the HIV-positive status of certain inmates, and that the intentional disclosure of any inmate's medical status, including an HIV-positive diagnosis, may constitute a violation of ADOC policy and will result in consideration of disciplinary action. The Directives are attached to the Parties' Agreement as Exhibit B.

b.     Training of Correctional Staff by AATEC. The ADOC will enter into a Memorandum of Understanding with the Alabama AIDS Training and Education Center ("AATEC") to provide correctional staff with training sessions throughout the system. ADOC and AATEC will agree on the duration of the training sessions. Training will be mandatory for all staff on all shifts.

Topics to be covered in this training will include the matters identified in the memorandum by Richard Meriwether with AATEC which is attached to the Parties' Agreement as Exhibit C, as well as an additional training segment utilized by AATEC related to HIV stigma. Training sessions will include opportunities for staff members to ask questions. The ADOC will continue to offer basic training related to communicable diseases and "universal precautions" through training offered to correctional officer candidates at the Alabama Corrections Academy. The ADOC will incorporate a segment related to HIV prejudice and stigma within the current Academy curriculum.

      c.   <u>Education Training for Inmates</u>.  The ADOC staff (together with representatives of the ADOC's independent medical provider) will provide educational training to inmates at each of the subject institutions (excluding Decatur Work Release and Montgomery Women's Center where such training has been previously provided). All individuals conducting training will be at least registered nurses licensed in the State of Alabama. This training will occur first at Julia Tutwiler Prison for Women. The materials and lesson plans to be utilized in the training of inmates will relate to HIV and other sexually transmitted infections ("STIs"), and will be mutually agreed upon by the Parties prior to the commencement of training. To the extent there is any disagreement regarding these materials and plans that is not rectified by discussions between the Parties,

any such disagreement shall be subject to the dispute-resolution provisions herein. Beginning on or before June 1, 2014, the ADOC will provide the Inmate Training Handouts on HIV and other STIs to all incoming inmates.

d.    Training of Medical Staff by AATEC.    Each clinician who is expected to provide primary care at facilities housing HIV-positive inmates will engage in a mandatory preceptorship with UAB's 1917 Clinic.    The hours of training devoted by each medical professional will vary depending upon their medical training, education and/or experience as well as the expected tasks assigned to them related to HIV-specific care.    To the extent necessary, the ADOC's independent medical provider may identify additional laboratory personnel who may receive training to ensure the accuracy of laboratory results for testing specific to HIV.

e.    Installation of Additional Telemedicine Units.    Before the reassignment of HIV-positive inmates to any of the subject facilities, the ADOC will install telemedicine units (i.e. videoconferencing hardware) at facilities where such telemedicine units are necessary for the delivery of HIV-specific consultation.

f.    Training of Classification Staff.    Additional training of ADOC Classification staff will be conducted internally.    As part of this training, ADOC will train classification personnel that an inmate's HIV status must not be documented in his or her classification file, except when such information must

11

necessarily be included as part of an inmate's classification record (for example, when an inmate's HIV status is an element of his or her criminal conviction). During this training, classification personnel will also be instructed not to inquire into an inmate's HIV status. The site classification personnel will attend the AATEC trainings provided to correctional staff at each facility. Classification personnel situated outside of individual ADOC facilities are not required to receive any such training under this Order.

g.   <u>Reclassification of HIV-Positive Inmates</u>. All HIV-positive inmates will undergo a reclassification under the revised housing policy pursuant to the existing ADOC Classification Manual. The ADOC will classify each inmate without regard to his or her HIV-positive status, consistent with ADOC's classification policies and procedures. No inmate will be given authority to choose or direct his or her placement at any particular facility. Any documentation produced during the reclassification process will conform to the instructions provided to classification personnel during the training sessions identified above in Paragraph 7.f. Consistent with the terms of the ADOC Classification Manual (including Section 4.4.3 thereof), the reclassification of HIV-positive inmates under this Order may constitute a "lateral transfer" and, as such, the ADOC may consider an inmate's request for assignment to "an institution that is closer to home or for program participation."

h.     Reassignment to Begin at Julia Tutwiler Prison for Women and Kilby Correctional Facility.  The reassignment of HIV-positive inmates will begin at Julia Tutwiler Prison for Women and Kilby Correctional Facility and that initial reassignment of inmates within these facilities will be utilized to identify any actual or potential issues which may result from these housing reassignments to prevent any further issues at any other locations.  Beginning on August 1, 2013, newly arriving female HIV-positive inmates will be processed together with non-HIV-positive female inmates through the intake / receiving process at Julia Tutwiler Prison for Women, which includes initial assignment to the receiving dorm within Tutwiler.

Beginning on September 13, 2013, newly arriving male HIV-positive inmates will be processed together with non-HIV-positive male inmates through the intake / receiving process at Kilby Correctional Facility, which includes initial assignment to the receiving dorm within Kilby.  Upon completion of the intake / receiving process, male HIV-positive inmates will be transferred to the Permanent Party dorm once sufficient beds are available, on the same basis as other inmates. These newly arriving male HIV-positive inmates assigned to the Permanent Party dorm will be subject to reassignment beginning on June 1, 2014.

8.     **IMPLEMENTATION   SCHEDULE**.   The   schedule   for implementation of the matters set forth in this Order shall be as follows:

13

| | |
|---|---|
| July 30, 2013 | Complete Security Staff and Inmate Training at Tutwiler and Kilby |
| July 30, 2013 | Complete Training for Classification Staff at Tutwiler and Kilby |
| July 30, 2013 | Complete Reclassification of Female Inmates at Tutwiler |
| August 1, 2013 | Reassign Female Inmates within Tutwiler |
| August 1, 2013 | Begin Assigning Incoming HIV-Positive Inmates to Receiving Dorms at Tutwiler and Kilby |
| September 3, 2013 | HIV-Positive Female Inmates first eligible for assignment to Birmingham Work Release |
| September 3, 2013 | ADOC issues Commissioner's Directives |
| September 13, 2013 | Begin Assignment of Incoming Male HIV-Positive Inmates at Kilby to Permanent Party Dorms |
| April 1, 2014 | Complete Installation of Telemedicine Equipment |
| May 1, 2014 | Complete Training for All Correctional and Medical Personnel and Inmates |
| June 1, 2014 | Begin Reassignment of Male HIV-Positive Inmates at Limestone |
| November 1, 2014 | Complete Reassignment of All HIV-Positive Inmates |

To the extent that the ADOC does not complete its specific obligations (as defined in this Agreement) within the timeframes set forth above, the Parties reserve the right to mutually agree in writing to an extension of this Order and the Plaintiff Class reserves the right to request an extension of the term of this Order as well as the reporting requirements stated herein and/or to seek enforcement of the above timeframes.

9.    **TRANSFER OF HIV-POSITIVE INMATES TO SELECT FACILITIES**.  Pursuant to the terms of this Order, HIV-positive inmates will be eligible to be housed at the following facilities:

14

| | |
|---|---|
| Birmingham Work Release | Tutwiler Prison for Women |
| Decatur Work Release | Staton Correctional Facility |
| Donaldson Correctional Facility | Bullock Correctional Facility |
| Fountain Correctional Facility | Elmore Correctional Facility |
| Limestone Correctional Facility | St. Clair Correctional Facility |
| Loxley Work Release | Mobile Work Release |
| Montgomery Women's Center | Red Eagle Work Center |

Nothing in this Order should be construed as creating any obligation for the ADOC to house any inmates in any facilities operated by the ADOC within the State of Alabama other than the facilities listed above. The Parties reserve the right to enter into a separate, independent agreement under which they may expand upon the number of facilities where HIV-positive inmates may be housed under the same circumstances as described in this Order.

10.   **WORK RELEASE CRITERIA**. The ADOC will implement and maintain a work release clearance policy and procedure which will be uniformly applied to all eligible inmates including all eligible HIV-positive inmates. In other words, the ADOC will no longer maintain any separate or distinct medical clearance form or criteria for eligible HIV-positive inmates. The work release criteria will be utilized in the basic form and substance attached to the Parties' Agreement as Exhibit D. The ADOC may revise and alter the attached work

release criteria to the extent necessary so long as the work release criteria do not include any criteria applicable only to HIV-positive inmates.

11.   **ARM BANDS**. Nothing contained in this Order shall prohibit the ADOC from utilizing arm bands to identify inmates housed in particular housing units in any ADOC facility, so long as the use of arm bands does not result in a direct or indirect means of disclosure of any inmate's HIV-positive status.

12.   **ATTORNEYS' FEES AND EXPENSES**.[1]   The ADOC shall remit to Counsel for the Plaintiff Class payment in the amount of One Million Three Hundred Thousand and No/100 ($1,300,000.00), which shall constitute payment for any and all attorneys' fees and expenses incurred, charged and/or otherwise generated by Counsel for the Plaintiff Class from the inception of the Litigation through the date of entry of this Order.  The Parties further agree that the above-referenced sum may be paid by the ADOC in three separate installment payments as follows: $450,000 within 30 days after entry of the Stipulated Order, $450,000

---

[1] The Court has independently evaluated the reasonableness of the attorneys' fees and expenses agreed upon by the parties.  After considering (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases, the Court finds that the agreed-upon fees set forth herein are reasonable.

on or before June 2, 2014, and $400,000 on or before November 3, 2014.  The Parties acknowledge and agree that the payments reflected in this paragraph constitute payment in full of attorneys' fees and expenses claimed by the Plaintiff Class and/or its counsel and/or owed by all Defendants in this matter through the date of the entry of this Order.  The Plaintiff Class and its counsel hereby voluntarily, completely and unconditionally waive any and all right, claim and/or entitlement to the recovery of any monies of any kind from any Defendant in this action for any and all attorneys' fees and/or expenses incurred, charged and/or otherwise generated by Counsel for the Plaintiff Class from the filing of this action through the date of entry of this Order.

Upon the termination or expiration of this Order pursuant to Paragraph 20 below, and from time to time prior to such termination, the Plaintiff Class may petition the Court for an award of attorneys' fees and expenses incurred by Counsel for the Plaintiff Class for the period of time beginning on the date of the entry of this Order and continuing through the date of the termination or expiration of this Order, or a subperiod thereof. Plaintiff Class and its counsel specifically agree that they shall charge an hourly rate of $195.00 per hour for attorneys and $100.00 per hour for non-attorneys for any fees incurred following the entry of this Order and that they shall not seek reimbursement for any fees, retainers, costs, charges or expenses of any kind incurred by any expert retained by the Plaintiff

16

Class or its counsel for work done or tasks completed during the term of the Parties' Agreement. The ADOC and the Defendants reserve their rights to object to and/or oppose any petition or request by the Plaintiff Class and/or its counsel for any fees or expenses which may be sought after the date of the execution of their Agreement. However, the ADOC and the Defendants agree that they will not assert in any such objection or opposition that the hourly rates agreed upon above are not reasonable.

13. **ACCESS TO INMATE RECORDS.** Counsel for the Plaintiff Class will have access to copies of the medical and/or institutional records of members of the Plaintiff Class. With respect to inmate medical records, Counsel for the Plaintiff Class shall provide the release of medical information forms typically used by the ADOC and its independent medical provider, at the time of the record request. Counsel for the Plaintiff Class will pay reasonable copying charges for such records not to exceed $0.50 per page.

14. **REPORTING REQUIREMENTS.** During the term of this Order, the ADOC shall provide the following reports on or before the dates shown below:

a.     <u>Inmate Housing Reports</u>: On May 15, 2014, August 15, 2014, November 17, 2014, February 13, 2015 and June 15, 2015, the ADOC will report to Counsel for the Plaintiff Class:

    i.  The name, AIS Number, assigned facility, custody level, medical code, mental health code, and EOS date for each member of the Plaintiff Class. The first time each inmate appears on this report, the ADOC will also report his or her county of commitment;

    ii.  the Names and AIS Numbers of HIV-positive Inmates assigned to the Acute Care Unit;

    iii.  the Number of HIV-positive Inmates assigned to the Acute Care Unit who are housed in disciplinary or administrative segregation;

    iv.  the Number of HIV-positive Inmates assigned to the Acute Care Unit who are housed in the infirmary at Limestone Correctional Facility;

    v.  the Number of HIV-negative Inmates assigned to the Acute Care Unit who are housed in the infirmary at Limestone Correctional Facility; and

    vi.  the Number of HIV-positive Inmates assigned to the Acute Care Unit who are housed in a general population dormitory at Limestone Correctional Facility.

  b.  <u>Medical Training Reports</u>: On October 1, 2013, February 3, 2014 and June 2, 2014, the ADOC will report to Counsel for the Plaintiff Class:

     i.     the Titles of medical contractor personnel who have completed the 1917 Clinic preceptorships referenced in this Order, and the dates of those preceptorships; and

     ii.     the Titles of any medical personnel who are scheduled to complete preceptorships under the terms of this Order but have not yet done so.

     c.     <u>Inmate & Staff Training Reports</u>: On October 1, 2013, February 3, 2014 and June 2, 2014, the ADOC will report to Counsel for the Plaintiff Class:

     i.     Locations and dates that HIV training sessions referenced in this Order took place since June 15, 2013;

     ii.     Approximate number of attendees at each session; and

     iii.     The number of classification staff and correctional staff who have yet to be trained at the facilities where trainings for their respective groups have already taken place.

Pursuant to the Health Insurance Portability and Accountability Act (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (1996), this Order expressly authorizes the ADOC and any health care provider, health plan, or other covered entity that contracts with ADOC to periodically provide to Counsel for the Plaintiff Class the names and AIS numbers of all prisoners with HIV who are assigned to the Acute Care Unit at Limestone Correctional Facility, even if such production

would result in the release of protected health information of such prisoners. The Parties are expressly prohibited from using or disclosing the protected health information obtained pursuant to this Order for any purpose other than this action. Further, the Parties shall either return to the covered entity from whom or which such protected health information was obtained, or to destroy the protected health information (including all copies made), immediately upon expiration of this Order. See 45 C. F. R. §§ 163.502(b); 164.512(e)(1)(v). This Order is and shall constitute an "order of a court or administrative tribunal" pursuant to the Privacy Rule, 45 C.F.R. § 164.512(e)(1)(i), promulgated under the Health Insurance Portability and Accountability Act (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (1996). "Protected health information" and "covered entities" have the meanings set forth in 45 C.F.R. § 160.103.

15.    **NOTIFICATION REGARDING MEDICATION COMPLAINTS**. To the extent that Counsel for the Plaintiff Class receives any report from any member of the Plaintiff Class that he or she is not receiving his or her HIV-related medications as prescribed, such complaints may be initially submitted via electronic mail to the following e-mail address: anne.hill@doc.alabama.gov and must be followed with a copy sent via United States Mail to Anne Adams Hill at the following mailing address: Anne Adams Hill, Alabama Department of Corrections, Post Office Box 301501, Montgomery, Alabama 36130-1501.

16.   **PLACEMENT OF AGREEMENT IN LAW LIBRARIES**.   The ADOC will place a copy of the Parties' Agreement in the law library at every ADOC facility where one exists.

17.   **NO MONETARY COMPENSATION**.   Excluding the payment of attorneys' fees and costs to Counsel for the Plaintiff Class in this action, nothing contained in this Order creates, mandates or constitutes any obligation of any Defendant, the State of Alabama and/or the Alabama Department of Corrections to compensate, pay or otherwise provide any monetary payment of any kind to any inmate formerly housed, currently housed or housed in the future in any correctional facility operated by or at the direction of the Alabama Department of Corrections.   Moreover, nothing in this Order creates any basis for any purported or actual Class Member to seek any financial recovery or monetary benefit of any kind from any Defendant, the State of Alabama and/or the Alabama Department of Corrections.   Nothing in this Order is intended to curtail the rights of individual prisoners with HIV to bring lawsuits for violations of the Americans with Disabilities Act or the Rehabilitation Act, which are not otherwise barred for reasons unrelated to this Order.

18.   **NO APPEAL**.   All Parties have waived all rights to seek any appeal from and/or appellate review of this Order.

19.   **COURT'S RETENTION OF JURISDICTION TO ENFORCE THE ORDER**.  Upon the entry of this Order, the Circuit Clerk for the United States District Court for the Middle District of Alabama is hereby directed to administratively close this case, but the Court shall retain jurisdiction to enforce this Order.

20.   **EXPIRATION OF ORDER**.  Unless otherwise agreed in writing by the Parties or extended by Order of the Court or unless a motion to extend the term of this Order is then pending, this Order shall expire by its own terms at 12:00 p.m. (Central Daylight Savings Time) on June 30, 2015.  In the event that any such pending motion identified above (as of June 30, 2015) is denied, this Order shall expire on the date on which such motion is denied by the Court.

21.   **NO WAIVER OF PRIVILEGE**.   Nothing in this Order or undertaken pursuant to this Order constitutes or is intended to constitute a waiver of any applicable privilege of any kind.

22.   **FINDINGS PURSUANT TO 18 U.S.C. § 3626(a)**.  The Court specifically finds that the prospective relief in this Order is narrowly drawn, extends no further than necessary to correct the violations of federal rights as alleged by the Plaintiff Class in the Second Amended Complaint, is the least intrusive means necessary to correct these violations, and will not have an adverse

impact on public safety or the operation of a criminal justice system. Accordingly, this Order complies in all respects with the provisions of 18 U.S.C. § 3626(a).

In making these findings pursuant to 18 U.S.C. § 3626(a), the Court expressly acknowledges that it is not relying in any way on all or any portion of any Private Settlement Agreement and nothing in this Order is intended to address, incorporate or render enforceable in this Court any obligation undertaken or assumed by the ADOC under the Private Settlement Agreement, which shall be enforceable pursuant to its own terms in a state court of competent jurisdiction.

Nothing contained in this Order or the Parties' Agreement shall be construed as an admission of any kind by the State of Alabama, any Defendant and/or any agent, employee, officer and/or representative of the Alabama Department of Corrections, except as expressly stated in this Order and the Parties' Agreement.

23.   **DISPUTE RESOLUTION**.  In the event of any dispute related to the terms and conditions of this Order, the Parties shall submit to mediation before United States Magistrate Judge Wallace Capel prior to filing any document with the Court related to the alleged matters which are the subject of the dispute.  To the extent that any party files any such motion or pleading with the Court without first submitting the matter to mediation, any such filing shall be dismissed *without prejudice* pending the outcome of mediation.

24.    **PRESS STATEMENTS.** Upon entry of this Order, the Parties shall issue the Joint Press Statement attached as Exhibit E to their Agreement, and any Party may subsequently choose to issue any other public statement.

25.    **NO ADDITIONAL EMPLOYMENT OBLIGATIONS.** Nothing in this Order shall be construed in any way as creating any obligation of any kind upon any Defendant, the State of Alabama or the Alabama Department of Corrections to hire, retain and/or employ any consultant, advisor, correctional officer, medical professional or other individuals of any kind, excluding the retention of AATEC.

26.    **NO VIOLATION OF ANY OTHER APPLICABLE COURT ORDERS.**   Nothing in this Order is intended to create any obligation or requirement which would result in the violation of any other currently existing order entered by a Court of competent jurisdiction.

IT IS SO ORDERED, this _____ day of _____, 2013.


_____
UNITED STATES DISTRICT JUDGE
MYRON H. THOMPSON

**[EXHIBIT B]**
**COMMISSIONER'S DIRECTIVES**

# M E M O R A N D U M

TO:          ALL ADOC STAFF AT ALL ADOC FACILITIES

FROM:      KIM T. THOMAS, COMMISSIONER

RE:         IMPLEMENTATION OF NEW POLICIES FOR HIV-POSITIVE INMATES

      This Memorandum is intended to notify all current leadership, correctional officers and staff within each facility currently operated by the Alabama Department of Corrections of upcoming changes in the Department's policies regarding HIV-positive inmates. As some of you may know, a federal court sitting in Montgomery has determined that the Department must alter its current policies related to HIV-positive inmates in order to comply with the Americans with Disabilities Act. The Department is committed to ensuring compliance with the federal court order and with the Americans with Disabilities Act.

      As a result of an agreement reached in this pending lawsuit, the Department has agreed to eliminate separate housing units for HIV-positive inmates at Limestone Correctional Facility and Tutwiler Prison for Women. The Department is currently operating under a specific plan to reassign HIV-positive inmates to general population facilities across the State. Under this plan, HIV-positive inmates will be assigned to the same living areas as other inmates within our facilities.

      In the coming weeks and months, there will be a series of mandatory training sessions offered at each institution. **You are expected to attend the training session at the institution where you are assigned**. We believe these training sessions are crucial to these new changes and will provide everyone with valuable information related to HIV and AIDS.

      The Department will not tolerate the mistreatment, harassment or abuse (verbal or physical) of any inmate because of his or her medical status. This zero-tolerance is particularly important with regard to our HIV-positive inmates.

      The Department expects all of our staff to respect the confidentiality of the medical status of our inmates. This is true for inmates with HIV as well. If the Department determines that any member of our staff intentionally disclosed an inmate's HIV-positive condition without the inmate's approval, appropriate disciplinary action will be taken.

      I appreciate your full cooperation on this very important matter.

               Respectfully,

               Kim T. Thomas
               Commissioner

# MEMORANDUM

TO:          ALL ADOC CLASSIFICATION PERSONNEL

FROM:      KIM T. THOMAS, COMMISSIONER

RE:          IMPLEMENTATION OF NEW POLICIES FOR HIV-POSITIVE INMATES

This Memorandum is intended to notify all current classification personnel within the ADOC of upcoming changes in the Department's policies regarding HIV-positive inmates. As some of you may know, a federal court sitting in Montgomery has determined that the Department must alter its current policies related to HIV-positive inmates in order to comply with the Americans with Disabilities Act. The Department is committed to ensuring compliance with the federal court order and with the Americans with Disabilities Act.

As a result of an agreement reached in this pending lawsuit, the Department has agreed to eliminate separate housing units for HIV-positive inmates at Limestone Correctional Facility and Tutwiler Prison for Women. The Department is currently operating under a specific plan to reassign HIV-positive inmates to general population facilities across the State. Under this plan, HIV-positive inmates will be assigned to the same living areas as other inmates within our facilities.

In the coming weeks and months, there will be a series of mandatory training sessions offered at each institution. **You are expected to attend the training session at the institution where you are assigned**. We believe these training sessions are crucial to these new changes and will provide everyone with valuable information related to HIV and AIDS.

In addition to these training sessions related to HIV and AIDS, the Department will also be providing specific training for all classification personnel regarding these new policies. At the outset, it is important for all classification personnel to understand the new aspects of this policy requires: (1) The ADOC will no longer consider HIV-positive status in the classification process;  (2) No HIV-positive inmate will be disqualified from housing at any ADOC institution simply because he or she is HIV-positive; and (3) Classification personnel *should not under any circumstances* inquire as to any inmate's HIV status. You will be receiving more detailed information on these three aspects in the upcoming training sessions.

The Department will not tolerate the mistreatment, harassment or abuse (verbal or physical) of any inmate because of his or her medical status. This zero-tolerance is particularly important with regard to our HIV-positive inmates. Lastly, the Department expects all of our classification staff to respect the confidentiality of the medical status of our inmates. This is true for inmates with HIV as well. If the Department determines that any correctional officer intentionally disclosed an inmate's HIV-positive condition without the inmate's approval, appropriate disciplinary action will be taken.

I appreciate your full cooperation on this very important matter.

Respectfully,

Kim T. Thomas
Commissioner

# M E M O R A N D U M

TO:   ALL INMATES WITHIN THE ADOC SYSTEM

FROM:  KIM T. THOMAS, COMMISSIONER

RE:   IMPLEMENTATION OF NEW POLICIES FOR HIV-POSITIVE INMATES

As some of you may know, a federal court in Montgomery has ruled that the Department must alter its current policies related to HIV-positive inmates to comply with the Americans with Disabilities Act. The Department is committed to ensuring compliance with the federal court order and with the Americans with Disabilities Act.

As a result of an agreement reached in this pending lawsuit, the Department has agreed to eliminate separate housing units for HIV-positive inmates at Limestone Correctional Facility and Tutwiler Prison for Women. The Department has a specific plan to reassign HIV-positive inmates to general population facilities across the State. Under this plan, HIV-positive inmates will be assigned to the same living areas as other inmates within our facilities.

In the near future, there will be a series of training sessions offered for inmates at each institution. **You are expected to attend this training session.** These training sessions are mandatory and important and will give valuable information related to HIV and AIDS. I urge each inmate to listen at these sessions so that you can better understand HIV and AIDS and how these diseases are transmitted.

At the outset, every inmate must understand 3 things:

(1) The Department will not tolerate any abuse, discrimination or violence against any inmate because he or she is HIV-positive.

(2) The Department will not inform inmates about the HIV-positive status of any other inmate who may be transferred to your facility.

(3) Ignorance is no excuse – the more you know about HIV and AIDS the better.

I appreciate your full cooperation on this very important matter.

Sincerely,

Kim T. Thomas
Commissioner

**[EXHIBIT C]**
**MEMORANDUM FROM AATEC (Richard Meriwether)**

# HIV Training

## For

## Correction Officers Working

## in

## Alabama Department of Corrections Facilities (ADOC)

HIV is a disease that affects a significant number of inmates currently in custody at various ADOC facilities. Training will cover the following information for officers: HIV transmission, prevention, occupational exposure, treatment and continuity of care. The desired outcome of this training is to enable officers to fulfill their responsibilities for the care, custody and control of detained and incarcerated persons who may be living w/HIV/AIDS.

**Training Objectives**

**As a result of this training, participants will be able to:**

1. Identify the body fluids & behaviors associated w/HIV transmission;
2. Identify how correction officers can prevent/reduce HIV transmission on the job (none as ever been identified in a correctional setting) and in their personal lives;
3. State the importance of HIV treatment, adherence, and continuity of care PLwHIV (People Living w/HIV);
4. Determine at least two health requirements inmates might have living w/HIV/AIDS ; and
5. List the correction officer's duty in safeguarding inmates' health rights.

This training will be provided by staff of the University of Alabama at Birmingham, Alabama AIDS Education & Training Center and adjunct instructors selected from local AIDS services organizations/Ryan White-funded clinics located in close proximity of ADOC facilities identified for this training.

Submitted by: Rick Meriwether, Program Manager/Lead Health Educator

UAB AETC, 703 19th St. South, ZRB 242, Birmingham, AL 35294-0007

205-975-9380

meriwether@uab.edu

**[EXHIBIT D]**
**REVISED WORK RELEASE CLEARANCE CRITERIA**



## ADOC Classification Requested Pre-Transfer Health Screening Review
## Health Service Screening Guideline:  Female Inmate

Step One:  Determine Current Mental Health Status

Check applicable:

_____   MH-0;   Clear for transfer anywhere in-state or out-of-state; includes ATEF

_____   MH-1;   Clear for transfer to Community Work Center (Stable in an out-patient setting for a least the past three (3) months)
                 *If currently on psychotropic medication requiring injections – does not meet clearance criteria requirements

_____   MH-1;   Clear for transfer to Work Release (Stable in an out-patient setting for at least the past six (6) months)
                 *If currently on psychotropic medication requiring injections – does not meet clearance criteria requirements

_____   MH-2;   House at Tutwiler, Tutwiler Annex, or Montgomery Women's Facility

_____   MH-3;   House in Residential Treatment Unit – open dorm

_____   MH-4    House in Residential Treatment Unit – closed dorm

_____   MH-5;   House in Intensive Psychiatric Stabilization Unit

_____   M-6;    House in Intensive Psychiatric Stabilization Unit until State Commitment or Hospital Services

_____   Other: _____

            _____   _____
            Mental Health Professional Signature/Title          Date

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Step Two:  Determine Current Medical Status

Check any that applicable:

_____   HC-1; Clear for transfer anywhere in-state or out-of-state; includes ATEF

_____   HC-1 or HC-2; Clear for transfer anywhere in-state; includes ATEF
        *HC-2 – prior to transfer, inmate must report to HCU and sign acknowledgement of need for diagnostic follow-up

_____   HC-3, may not be transferred anywhere at this time until released by the Provider who initiated the HC-3 hold status

        HC-3 update scheduled with the Provider on this date: _____

        **HC-3 updated** on: _____ to: HC- _____   Cleared: _____yes   _____no

_____   HC-4; House at Tutwiler

_____   HC-5; House at Tutwiler – or contact ADOC Associate Commissioner of Health Services or Special Needs Manager

_____   HC-6 or HC-7; House at Tutwiler – or contact ADOC Associate Commissioner of Health Services or Special Needs Manager

_____   Other: _____

            _____   _____
            Medical Staff Signature/Title                      Date


_____   _____   _____
Inmate Name                                    AIS#           Current A.D.O.C. Institution

File in – ADOC Health Record
Copy to - Classification Department            ADOC – Office of Health Services, 2008 (rv July 2009, February 2012, April 2013)

*This form is not to be utilized when preparing an inmate for transfer to; a jail for a court appearance, when transferring an inmate to the custody and control of a federal system, when releasing an inmate to the custody of the Alabama Board of Pardons and Paroles, when the inmate is released to another state correctional system, when the inmate is no longer assigned an active ADOC AIS number.*

### ADOC Classification Requested Pre-Transfer Health Screening Review
### Health Service Screening Guideline:  Male Inmate



Step One:  Determine Mental Health Clearance Status
Check applicable:

_____   MH-0;   Clear for transfer anywhere in-state or out-of-state; includes ATEF

_____   MH-1;   Clear for transfer to Community Work Center (Stable in an out-patient setting for a least the past three (3) months)
　　　　　　　　*If currently on psychotropic medication requiring injections – does not meet clearance criteria requirements

_____   MH-1;   Clear for transfer to Work Release (Stable in an out-patient setting for at least the past six (6) months)
　　　　　　　　*If currently on psychotropic medication requiring injections – does not meet clearance criteria requirements

_____   MH-2;   House at a major institution

_____   MH-3;   House in Residential Treatment Unit – open dorm

_____   MH-4;   House in Residential Treatment Unit – closed dorm

_____   MH-5;   House in Intensive Psychiatric Stabilization Unit

_____   MH-6;    House in Intensive Psychiatric Stabilization Unit until State Commitment or Hospital Services

_____   Other: _____   _____   _____
　　　　　　　　　　　　　　　　　　　　　　　　　Mental Health Staff Signature/Title　　　　　　　　Date

--------------------------------------------------------------------------------------------------------------------------

Step Two:  Determine Current Medical Status
Check applicable:

_____   HC-1; Clear for transfer anywhere in-state or out-of-state; includes ATEF

_____   HC-1 or HC-2; Clear for transfer anywhere in-state; includes ATEF
　　　　　　*HC-2 – prior to transfer, inmate must report to HCU and sign acknowledgement of need for diagnostic follow-up

_____   HC-3, may not be transferred anywhere at this time until released by the Provider who initiated the HC-3 hold status

　　　　　　HC-3 update scheduled with the Provider on this date: _____

　　　　　　**HC-3 updated** on: _____ to: HC-_____   Cleared: _____yes   _____no

_____   HC-4; House at a major institution

_____   HC-5; Major institution – contact ADOC Associate Commissioner of Health Services or Special Needs Manager

_____   HC-6 or HC-7; Major institution -- contact ADOC Associate Commissioner of Health Services or Special Needs Manager

_____   Other: _____   _____   _____
　　　　　　　　　　　　　　　　　　　　　　　　　Medical Staff Signature/Title　　　　　　　　　　Date


_____   _____   _____
Inmate Name　　　　　　　　　　　　　　　　AIS#　　　　　　　　Current A.D.O.C. Institution

File in – ADOC Health Record
Copy to - Classification Department　　　　　　　ADOC – Office of Health Services, 2008 (rv July 2009, February 2012, April 2013)

*This form is not to be utilized when preparing an inmate for transfer to; a jail for a court appearance, when transferring an inmate to the custody and control of a federal system, when releasing an inmate to the custody of the Alabama Board of Pardons and Paroles, when the inmate is released to another state correctional system, when the inmate is no longer assigned an active ADOC AIS number.*

ADOC – Office of Health Services
**Medical Coding Assessment Guide**



| Check All Below That Apply | | Code | Considerations | Health Access Required | Institution |
|---|---|---|---|---|---|
| | Generally Healthy | 1 | Gender | Random | Any Institution |
| | Chronic Care Clinic Enrollee | 1 | Diagnosis greater than 3 months; Stable | Provider Follow-Up no less than every 120 days | Any Institution |
| | Diabetes Mellitus Non-ID or ID (no sliding scale) | 1 | Manages Self Care, Hg A1C ≤ 7, Stable, Compliant | Provider Encounter no less than: Non – ID every 120 days; ID every 90 days | Any Institution |
| | On Prescription Medication | 1 | Compliant with Critical Rx, KOP Consideration Ok | Provider Medication Review no less than every 120 days (90 day follow-up required for mental health Rx review) | Any Institution |
| | Abnormal GYN or Abnormal Mammogram Results | 2 | Resolution Required; Consider Location Access for Follow-Up Required | Provider Follow-Up no less than every 30 days | In-State Female Institution |
| | Medical Hold | 3 | Medical Work-Up Incomplete or Medical Services Pending | Provider Encounter no less than every 30 days | <u>Do not transfer</u> from current institution until a direct order to do so is obtained from Provider ordering the HC-3 status |
| | Critical Non-Compliance Issues, Unstable | 4 | General well being currently questionable | 24/7 Health Unit | Level IV or above |
| | Critical Non-Compliance Rx Issues | 4 | Does not report for essential medications, must be monitored | 24/7 Health Unit | Level IV or above |
| | Critical Issues, Requires Therapeutic Lab Values | 4 | Medical stability dependent on current test results | 24/7 Health Unit | Level IV or above |
| | Diabetic with Sliding Scale Rx | 4 | Blood Sugar fluctuates, medical access required | 24/7 Health Unit | Level IV or above (*until ADOC – OHS review) |
| | Pregnant | 4 | Environment | 24/7 Health Unit | Tutwiler |
| | Active TB | 5 | Confinement to Negative Air Flow Room in the Infirmary | Negative Air Flow 24/7 Health Unit | Kilby, Limestone, Tutwiler, Bibb, Donaldson |
| | Hepatitis C <u>with</u> a clinical plan for chemotherapy Tx | 5 | Appointment/s for Chemotherapy Scheduled | 24/7 Health Unit | St. Clair, Donaldson, Limestone, Tutwiler |
| | Pre-Dialysis or Dialysis | 5 | Dialysis Pending; Requires On-Site Dialysis Unit | 24/7 Health Unit | St. Clair, Tutwiler, Limestone |
| | Hospice | 5 | Approved Institution; Hospice Program Trained | 24/7 Health Unit | Transfer to and from Major Institution must be coordinated through OHS |
| Subset/s: * | **Limiting** Physical Disabilities **with** other Serious or Critical Medical Conditions | 6 *list Subset Code A – Z. | Blind, Deaf, Mute, Frail **which present physical limitations related to ADL** and/or Elderly, Adolescent, Cancer Process, Unstable Cardiac, other/s >>>>> | Health Access Within Approved ADOC – OHS Parameters *see subset code sheet | Newly diagnosed persons; Contact ADOC – OHS for institution and housing placement assistance. Consult ADOC – OHS before transferring to or from an institution. |
| | Cognitive Disorder; i.e., Alzheimer's, Dementia | 7 | Confirmed by Medical and Mental Health exams. MD Diagnosis. Ruled out by CT Scan or MRI. | Health Access Within Approved ADOC – OHS Parameters | Newly diagnosed persons; Contact ADOC – OHS for institution and housing placement assistance. Consult ADOC – OHS before transferring to or from an institution. |

**Highest Numerical Code:** _____   **Provider Signature:** _____   **Date:** _____

**Provider Comments:** _____

_____

**Inmate Name** _____   **AIS Number** _____   **DOB** _____   **Gender** _____



Alabama Department of Corrections
- Office of Health Services -

**Medical Code HC-6**
**Subset's A – Z**

Specify the condition and/or capacitating issue(s) which would generally inhibit activities of daily living (ADL); i.e., ambulation, bathing, dressing, feeding, and toileting; And/or specify the condition and/or capacitating issue(s) of which special attention to physical safety might be required.

<u>A – O</u>

A – Cardiovascular
B – Dermatologic
C – Digestive
D – ENT – sight (blind – both eyes, unable to correct), hearing (extremely deaf), speech (mute)
E – Endocrine System
F – Hematological condition
G – Muscular condition
H – Nephrology System
I – Nervous System
J – Reproductive System
K – Respiratory System
L – Skeletal System
M – Urology System
N – Do not move without prior consultation with ADOC – OHS Associate Commissioner
O – Reserved for future use

<u>P - Z</u>

P – Adolescent – growth and development considerations
Q – Cancer Care
R – Cardiac Care
S – Communicable Disease – highly contagious
T – CPAP Dependent
U – Elderly – unable to meet or attend to own ADL's
V – Frail – prone to falls
W – Hep C Treatment Pending
X – Life Expectance does not exceed 12 months
Y – Other (specify)
Z – Reserved for future use



## ADOC – Office of Health Services
## Medical (HC-) and Mental Health (MH-) Services Code Map

| ADOC Institutions and/or Contracted Facilities | Health Unit In-Patient Beds | ADOC Health Unit within 2 miles | Nurse Coverage | Visiting CRNP or MD | ADL Special Needs Probability | Medical Health Care Code match | Medical/Dental Information | Mental Health Code Match | Mental Health Information |
|---|---|---|---|---|---|---|---|---|---|
| Alex City | No | No | 8 hours Weekly minimum | Weekly | Low | 1, 2, 3 | Base HCU – Kilby | 0, 1 | |
| ATEF | No | No | 24/7 | Weekly | Low | 1, 2 | Dental Services at Bibb Must be MH-0 and HC-1 | 0 | |
| Atmore | No | Yes | Partial – 8 hours scattered daily | Weekly | Low | 1, 2, 3 | Base HCU Fountain | 0, 1 | |
| Bibb | Yes | N/A | 24/7 | Mon - Fri | High | 1, 2, 3, 4 | Negative Air Flow Room (1) | 0, 1, 2 | |
| Birmingham WR | No | No | 24/7 | Weekly | Low | 1, 2, 3 | Main HCU – Tutwiler Dental Services at St. Clair | 0, 1 | |
| Bullock | Yes | N/A | 24/7 | Mon - Fri | High | 1, 2, 3, 4 | Bullock Health Unit and Crisis Stabilization Unit on same campus but are separate entities. | 0, 1, 2 | Intensive Stabilization Unit – MH - 3, 4, 5, 6; Residential Treatment Unit; Open RTU: 3 |
| Camden | No | No | 8 hours Weekly minimum | Weekly | Low | 1, 2, 3 | Base HCU - Fountain | 0, 1 | |
| Cattle Ranch | No | No | 8 hours Weekly minimum | Weekly | Low | 1, 2, 3 | Base HCU - Bibb | 0, 1 | |
| Childersburg | No | No | 16 hours daily | Weekly | Low | 1, 2, 3 | Base HCU – St. Clair | 0, 1 | |
| Decatur | No | No | 16 hours daily | Weekly | Low | 1, 2, 3 | Base HCU – Limestone | 0, 1 | |
| Donaldson | Yes | N/A | 24/7 | Mon - Fri | High | 1, 2, 3, 4 | Negative Air Flow Room (1) | 0, 1, 2 | Residential Treatment Unit; Open RTU MH-3; Closed RTU MH-4 |
| Draper | No | Yes | Partial – 8 hours scattered daily | Weekly | Low | 1, 2, 3, 4 | Base HCU – Staton, Special Education | 0, 1, 2 | |
| Easterling | Yes | N/A | 24/7 | Mon - Fri | High | 1, 2, 3, 4 | Limited # Infirmary Beds | 0, 1, 2 | |
| Elba | No | No | 8 hours Weekly minimum | Weekly | Low | 1, 2, 3 | Base HCU - Easterling | 0, 1 | |
| Elmore | No | Yes | Partial – 8 hours scattered daily | Weekly | Low | 1, 2, 3 | Base HCU - Staton | 0, 1, 2 | |
| Fountain | Yes | N/A | 24/7 | Mon - Fri | High | 1, 2, 3, 4 | 10 ward beds, 2 safe cells | 0, 1, 2 | |
| Frank Lee | No | No | 8 hours Weekly minimum | Weekly | Low | 1, 2, 3 | Base HCU - Staton | 0, 1 | |
| Hamilton | Yes | N/A | 24/7 | Mon - Fri | High | 1, 2, 3, 4 | Aged and Infirmed Dental Services at Donaldson | 0, 1, 2 | |
| Hamilton WR | No | Yes | 8 hours Weekly minimum | Weekly | Low | 1, 2, 3 | Dental Services at Donaldson | 0, 1 | |

Revised 092012, 052013



## ADOC – Office of Health Services
## Medical (HC-) and Mental Health (MH-) Services Code Map

| ADOC Institutions & Contracted Institutions | Health Unit In-Patient Beds | ADOC Health Unit within 2 miles | Nurse Coverage | Visiting CRNP or MD | ADL Special Needs Probability | Medical Health Care Code match | Medical/Dental Information | Mental Health Code Match | Mental Health Information |
|---|---|---|---|---|---|---|---|---|---|
| Holman | Yes | N/A | 24/7 | Mon - Fri | Mod | 1, 2, 3, 4 | 4 ward beds, Crisis cell in Seg | 0, 1, 2 | |
| J.O. Davis | No | Yes | 8+ hours scattered daily | Weekly | Low | 1, 2, 3 | Base HCU – Fountain | 0, 1 | |
| Kilby | Yes | N/A | 24/7 | Mon - Fri | High | 1, 2, 3, 4, 5, 6, 7 | Male - Intake Center, Negative Air Flow Rooms (multi), Central Infirmary Unit | 0, 1, 2 | |
| Limestone | Yes | N/A | 24/7 | Mon - Fri | High | 1, 2, 3, 4 | Negative Air Flow (1), Dialysis (1) | 0, 1, 2 | |
| Loxley | No | No | 8+ hours daily | Weekly | Low | 1, 2, 3 | Base HCU – Fountain | 0, 1 | |
| Mobile | No | No | 8 hours Weekly minimum | Weekly | Low | 1, 2, 3 | Base HCU – Fountain | 0, 1 | |
| Montgomery WF | No | Yes | 24/7 | Weekly Minimum | Low | 1, 2, 3 | Base HCU – Tutwiler | 0, 1 | |
| Red Eagle | No | No | 8 hours Weekly minimum | Weekly | Low | 1, 2, 3 | Base HCU – Staton | 0, 1 | |
| St. Clair | Yes | N/A | 24/7 | Mon - Fri | High | 1, 2, 3, 4, 5 | *Dialysis Unit | 0, 1, 2 | |
| Staton | Yes | N/A | 24/7 | Mon - Fri | High | 1, 2, 3, 4 | C-Pap preferred | 0, 1, 2 | |
| Tutwiler | Yes | N/A | 24/7 | Mon - Fri | High | 1, 2, 3, 4, 5, 6, 7 | Female – Intake Center Negative Air Flow Room (*Dialysis) | 0, 1, 2 | Intensive Stabilization Unit: 3, 4, 5, 6 Residential Treatment Unit; Open RTU: 3 |
| Tutwiler Annex | No | Yes | 8+ hours daily | Weekly | Low | 1, 2, 3 | Base HCU – Tutwiler | 0, 1 | |
| Ventress | Yes | N/A | 24/7 | Mon - Fri | High | 1, 2, 3, 4 | | 0, 1 | |
| Jail Contracts | Unknown | Unknown | Unknown | Unknown | Low | 1 | Call OHS if issues arise Must be MH-0 and HC-1 | 0 | |

1 = General Housing Anywhere
2 = Consider clinical follow-up required when transferring to another geographical area.
   Check with current Health Care Unit prior to transferring.
3 = Medical Hold at Current Institution - until released by Provider (M.D., CRNP, or PA) who ordered the HC-3 status
4 = Requires Major Institution with 24/7 nursing staff in-house
5 = Major Institution with 24/7 nursing in-house and Specialized Care required – Contact Office of Health Services
6 = Major Institution with 24/7 nursing in-house; prior to transfer from current institution contact Office of Health Services
7 = Contact Office of Health Services for transfer and placement options

Insulin Dependent Diabetics requiring Sliding Scale Insulin – do not transfer from Major Institution without review by the
ADOC - Office of Health Services at: 334-353-3887

| Specialized Care | |
|---|---|
| Dialysis, Dialysis Pending | St. Clair, Limestone, Tutwiler |
| Hep C Treatment | St. Clair, Limestone, Donaldson, Tutwiler |
| Air Borne Disease | Negative Air Flow Room/s: Kilby, Limestone, Donaldson, Bibb, St. Clair |
| Hospice (All Major Inst.) | Consult OHS prior to a transfer |
| HC-6 | Consult OHS prior to a transfer |
| HC-7 | Consult OHS prior to a transfer |

Revised 092012, 052013

# Exhibit "A-2"
Private Agreement

# PRIVATE SETTLEMENT AGREEMENT

This PRIVATE SETTLEMENT AGREEMENT is entered into as of this _28th_ day of June, 2013, by and between **KIM T. THOMAS**, in his official capacity as Commissioner of the Alabama Department of Corrections (hereinafter, the "Alabama Department of Corrections" or "ADOC") and **DANA M. HARLEY, JEFFERY G. BEYER, and ALQADEER HAMLET**, through counsel and in their capacities as class representatives under Rule 23(b) of the Federal Rules of Civil Procedure, by and on behalf of all current and future HIV-positive prisoners incarcerated in the Alabama Department of Corrections, ("Plaintiff Class" and together with the ADOC, the "Parties"), who constitute the plaintiff class certified by the U.S. District Court for the Middle District of Alabama, Northern Division, in the case styled as Louis Henderson, _et al._ v. Kim Thomas, _et al._, Case No. 2:11-cv-00224-MHT, In the United States District Court for the Middle District of Alabama, Northern Division ("the Litigation").

WHEREAS, the Plaintiff Class filed the Litigation on March 28, 2011, and, as set forth in the pleadings, alleged that the ADOC violated the rights of the Plaintiff Class under the Americans with Disabilities Act and the Rehabilitation Act;

WHEREAS, on December 21, 2012, the Court entered an Opinion and Judgment, holding that "except as to the work-release policy, the ADOC's HIV-segregation policy violates the ADA," and directed the Parties to meet and attempt to agree upon a remedy;

WHEREAS, the Parties agreed to the terms of this Private Settlement Agreement contemporaneously with the terms and conditions set forth in the document entitled "Settlement Agreement" which is attached hereto as Exhibit A;

WHEREAS, the Parties plan to submit Exhibit A to the United States District Court for approval and adoption as an enforceable Order in the Litigation;

NOW, THEREFORE, in consideration of the premises, the mutual promises of the parties, including those set forth in Exhibit A, and for other good and valuable considerations, including the forbearance of the Plaintiff Class from pursuing further relief in the U.S. District Court for the Middle District of Alabama beyond that set forth in Exhibit A and this Private Settlement Agreement, the receipt and sufficiency of which are hereby acknowledged by the ADOC, the Parties hereto contract, covenant and agree as follows:

1.    In addition to allowing members of the Plaintiff Class to be eligible to be assigned to the facilities listed in Exhibit A, the ADOC hereby covenants and agrees in this separate agreement that members of the Plaintiff Class will also be eligible to be housed (i.e. will not be excluded from assignment) at every other facility operated by the ADOC within the State of Alabama.  As part of the reclassification process specified in Exhibit A, HIV-positive inmates will be eligible for placement at every facility operated by the ADOC within the State of Alabama.  Consistent with the terms of this Private Settlement Agreement and Exhibit A hereto, the ADOC shall thereafter assign HIV-positive inmates to such facilities on the same basis as HIV-negative individuals.   For purposes of this Private Settlement Agreement, "every facility" includes major facilities, work releases, community work centers, and all other types of facilities housing individuals in ADOC custody, either currently or in the future within the State of Alabama.

2.    The ADOC will place a copy of this Private Settlement Agreement in the law library at every ADOC facility where one exists.

3.     The rights, obligations and covenants set forth in Section II, Subsections A, C, E, F, H, I, L and M of Exhibit A are incorporated herein and shall apply in equal measure to every facility which is a subject of this Private Settlement Agreement.

4.     This Private Settlement Agreement shall expire by its own terms upon the final termination of relief in *Henderson v. Thomas*, No. 2:11-CV-00224 (M.D. Ala.) unless a mediation or lawsuit is pending seeking to enforce this Agreement. In such event, this Private Settlement Agreement shall expire at such time as the relief agreed upon or ordered by the Court has been implemented or at such time as the Court denies relief.

5.     Subject to and conditioned upon the Dispute Resolution provision set forth herein, it is the intention of the Parties that, in the event of a material breach of this Private Settlement Agreement, this Private Settlement Agreement shall be enforceable in the Circuit Court for Montgomery County, Alabama.  To the extent that this Private Settlement Agreement renders HIV-positive inmates eligible for consideration for housing at all appropriate gender-specific ADOC facilities within the State of Alabama, the ADOC acknowledges and agrees that such decision constitutes a ministerial act which shall be deemed to have been undertaken as of November 1, 2014, and that, as of November 1, 2014, no further judgment or discretion shall be required or necessary in considering HIV-positive inmates to be deemed eligible for housing at these ADOC facilities.  The foregoing statement is offered solely for purposes of this Agreement and was carefully considered and made with respect to the specific facts presented during the course of mediation of this matter.  Nothing herein should be construed as an admission or statement of any kind by the ADOC that its classification process, any classification-related decisions and/or any reclassification occurring hereunder constitutes a "ministerial

3

act." Moreover, the ADOC expressly states that the classification process remains a discretionary act and shall not be the subject of any admission hereunder. Consistent with the above and the terms hereof, the ADOC further acknowledges and agrees that the decision related to the eligibility of HIV-positive inmates for housing at all applicable facilities (without regard to their HIV status) constitutes a legal duty of public officials, the performance of which requires the exercise of no discretion, and which is enforceable against the ADOC by mandamus, breach of contract action, declaratory judgment, or injunction seeking specific performance, in the Circuit Court for Montgomery County, Alabama. The Plaintiff Class agrees that, in connection with any claim brought to enforce this Private Settlement Agreement, they will not seek and shall not be entitled to recover any monetary damages, attorneys' fees or expenses under Alabama law. In exchange for the foregoing, the ADOC agrees that it will not raise the defense of sovereign immunity under Article I, Section 14 of the Alabama Constitution in response to claims for mandamus relief, breach of contract, declaratory judgment, injunctive relief and/or specific performance to enforce the terms and conditions of this Private Settlement Agreement in the Circuit Court for Montgomery County, Alabama. The ADOC acknowledges and agrees that the Plaintiff Class and the ADOC enter into this Private Settlement Agreement with the understanding and belief that any material breach of this Private Settlement Agreement shall be enforceable via mandamus or other equitable claims before the Circuit Court for Montgomery County, Alabama.

6.     The ADOC acknowledges and agrees that it has considered the terms of this Private Settlement Agreement at the highest levels, and that, based upon information currently available to the ADOC, the ADOC can meet its obligations under this Private Settlement Agreement having taken into consideration security,

safety, finances, and all other relevant factors. The ADOC represents that, based upon its budgetary planning for the current fiscal year and other information available to the ADOC, sufficient funding will be available in the future in order to fund the ADOC's compliance with the requirements of this Private Settlement Agreement.

7.      This Private Settlement Agreement, and all provisions thereof, are binding and enforceable against the ADOC and against all successors of all defendants.

8.      Nothing in this Private Settlement Agreement or undertaken pursuant to this Private Settlement Agreement constitutes or is intended to constitute a waiver of any applicable privilege of any kind.

9.      In the event of any dispute related to the terms and conditions of this Private Settlement Agreement between the Parties, the Parties shall submit to mediation before United States Magistrate Judge Wallace Capel prior to filing any document with the Court related to the alleged matters which are the subject of the dispute. To the extent that any party files any such motion or pleading with any court without first submitting the matter to mediation, any such filing shall be dismissed without prejudice pending the outcome of mediation. Should Judge Capel be unwilling or unable to mediate a dispute related to this Private Settlement Agreement, the Parties hereto will agree upon a mediator and will equally share the cost of said mediator.

10.      This Private Settlement Agreement shall be limited to the terms set forth in the written agreement executed by the Parties. The Parties agree that neither party will seek any Court-ordered modification of this Private Settlement Agreement among the Parties. The Parties further covenant and agree that this

Private Settlement Agreement may not be modified except in writing, signed by authorized representatives of all Parties.

11.  Nothing in this Private Settlement Agreement shall be construed in any way as creating any obligation of any kind upon any Defendant, the State of Alabama or the Alabama Department of Corrections to hire, retain and/or employ any consultant, advisor, correctional officer, medical professional or other individuals of any kind, excluding the retention of AATEC.

12.  Nothing in this Private Settlement Agreement is intended to create any obligation or requirement which would result in the violation of any other currently existing order entered by a Court of competent jurisdiction.

13.  This Private Settlement Agreement was entered into in the State of Alabama and shall be construed and interpreted in accordance with the laws of that state, other than issues on which federal law governs.  Wherever possible, each provision of this Private Settlement Agreement shall be interpreted in such a manner as to be effective and valid under applicable law.  However, if any provision of this Private Settlement Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity; all remaining provisions shall be enforceable to the full extent permitted by law.

14.  This Private Settlement Agreement contains the entire understanding and agreement of the Parties with respect to the subject matter hereof. Furthermore, all Parties acknowledge that there are no other representations and no other obligations that relate to the subject matter of this Private Settlement Agreement.

15.     This Private Settlement Agreement may be executed in counterparts and all such counterparts when so executed shall together constitute the final agreement as if one document had been signed by all of the Parties.   Any final agreement may be executed by facsimile copy and each signature thereto shall be and constitute an original signature, again as if all the Parties had executed a single original document.

**[SIGNATURE PAGES TO FOLLOW]**

**[SIGNATURE PAGE OF KIM T. THOMAS]**

_____

**KIM T. THOMAS, in his official capacity as
Commissioner of the Alabama Department of
Corrections**

STATE OF ALABAMA          )
                          )
COUNTY OF MONTGOMERY      )

    I, a Notary Public in and for said County in said State, hereby certify that **KIM T. THOMAS**, who is the Commissioner of the Alabama Department of Corrections, who is known to me, acknowledged before me on this day that, being informed of the contents of the above and foregoing, he executed the same voluntarily and in his official capacity on behalf of said agency of the State of Alabama.

    Give under my hand and official seal of office this 28th day of JUNE , 2013.

_____
Notary Public
My commission expires: 6.18.2016

8

**[SIGNATURE PAGE OF PLAINTIFFS' COUNSEL]**

Dated: 07/31/13

MARGARET WINTER
Counsel for Plaintiff Class
ACLU National Prison Project


STATE OF _District of Columbia_
COUNTY OF _Washington_ )

Before me, the undersigned, a Notary Public, personally appeared MARGARET WINTER whose name is signed to the foregoing instrument, and who is known to me, after being duly sworn on oath, deposed and acknowledged that, being informed of the contents of such instrument, he executed the same knowingly and voluntarily,

Give under my hand and official seal of office this 31 st day of _July_ , 2013,

Notary Public
My commission expires: 8/31/2013

**[NOTARY** VICTORIA MENDS-COLE
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires August 31, 2013

**[EXHIBIT A]**

**SETTLEMENT AGREEMENT**

# Exhibit "B"

NOTICE OF PROPOSED SETTLEMENT
AGREEMENT IN CLASS ACTION LAWSUIT

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**NOTICE OF PROPOSED SETTLEMENT AGREEMENT
IN CLASS ACTION LAWSUIT**
*Henderson v. Thomas,* No. 2:11-cv-224-MHT

**READ THIS NOTICE AND THE ATTACHED DOCUMENTS CAREFULLY!
THESE DOCUMENTS MAY AFFECT YOUR LEGAL RIGHTS**

## Why did I get this notice?

This Notice concerns a class-action suit called *Henderson v. Thomas*, filed on behalf of all prisoners with HIV currently in the custody of the Alabama Department of Corrections.

The purpose of this Notice is to explain the current status of the lawsuit, let you know how to get answers to your questions about the proposed settlement, and explain how to send any objections to the Court. The proposed settlement documents are attached to this Notice.

## What is this lawsuit about?

The Plaintiffs in this lawsuit are Alabama prisoners with HIV, and are represented by attorneys from the ACLU appointed as Class Counsel by the Court.  The Defendants are the Commissioner of the Alabama Department of Corrections and the Wardens of Julia Tutwiler Prison for Women, Limestone Correctional Facility, Montgomery Women's Facility, and Decatur Work Release.

The Plaintiffs filed this lawsuit in federal court in March 2011. The lawsuit specifically challenged the following ADOC policies:  (1) excluding prisoners with HIV from assignment to all but four of the 29 prisons and work release facilities in the ADOC system; (2) requiring all prisoners with HIV at Limestone to be housed in HIV-only dorms; (3) requiring all prisoners with HIV at Tutwiler to be housed in HIV-only dorms, (4) excluding prisoners with HIV from all food-related jobs in work release and in prison; (5) excluding prisoners with HIV from residential programs at Limestone and Tutwiler that are offered to prisoners who do not have HIV; (6) requiring all prisoners with HIV at Limestone to wear white armbands, and (7) requiring all prisoners with HIV to meet certain HIV-specific medical criteria for work release.

The lawsuit asked the Court to order ADOC to end its segregation policies. The lawsuit did <u>not</u> ask for money damages.

## What is the status of the lawsuit?

The lawsuit went to trial in September and October 2012.  On December 21, 2012, Judge Thompson issued an Opinion and Judgment in favor of the Plaintiffs and against the Defendants. The Judge ruled that six out of the seven HIV-segregation policies listed above violate the rights of prisoners with HIV under the Americans with Disabilities Act and the Rehabilitation Act.  The

Judge did not rule on whether ADOC's HIV work-release criteria violate the law: the Judge decided that there would need to be further proceedings in this case to decide that issue.  The Judge did not decide how many (or which) of its 29 prisons and work release facilities ADOC would need to integrate.  Instead, the Judge directed the parties to meet to try to agree on a remedy that would comply with his ruling.

In June 2013, lawyers for the Plaintiffs and Defendants met to try to reach an agreement on all remaining issues in the case, including how many and which prisons and work release facilities would be integrated, and when they would be integrated; whether ADOC´s work release criteria for people with HIV should be eliminated; and the amount, if any, that the ADOC should pay Class Counsel in reasonable attorneys' fees and expenses.  After weeks of negotiation, the parties reached the proposed settlement that is enclosed with this Notice.

Judge Thompson has ordered the ADOC to provide a copy of this Notice and the proposed settlement to each ADOC prisoner with HIV.  The Judge will hold a hearing on _____, 2013, when he will consider the comments and objections that prisoners with HIV have submitted to the Court, and will decide whether the proposed settlement is fair, reasonable, and adequate.

## What are the terms of the proposed settlement?

The proposed settlement includes two separate agreements:  a Primary Agreement, which can be enforced only in federal court, and a Private Agreement, which can be enforced only in state court. Here is a summary of the terms of the proposed settlement:

- The ADOC will change its policies so that as of November 2014, prisoners with HIV may be housed in general population dorms at <u>any</u> ADOC facility, under the same classification rules that apply to all other prisoners and without regard to HIV status.  The following fourteen facilities will be integrated under the Primary Agreement: Bullock Correctional Facility, Decatur Work Release, Donaldson Correctional Facility, Elmore Correctional Facility, Fountain Correctional Facility, Limestone Correctional Facility, Loxley Work Release, Mobile Work Release, Red Eagle Work Center, Staton Correctional Facility, St. Clair Correctional Facility, Birmingham Work Release (female only), Montgomery Women's Center (female only), and Tutwiler Prison for Women (female only).  Each of the remaining fifteen facilities in the ADOC system will be integrated under the Private Agreement.

- Before any integration takes place, ADOC will take steps to make sure that integration occurs safely, that ADOC is prepared to provide appropriate HIV care at any facility to which prisoners with HIV are transferred, and to organize transfers in a way that minimizes the risk that any prisoner's HIV status will be disclosed through the transfer process.   These are the steps that ADOC must take before any integration takes place:

  - ➤ Commissioner Thomas will issue written directives to all classification staff, security staff, and prisoners regarding the upcoming changes. These written directives are included with the documents attached to this Notice.

➢ The Commissioner's directives will state a policy of "zero tolerance" for any threats, abuse or violence against any prisoner because of HIV status.

➢ The Commissioner's directives will direct all ADOC personnel to respect the confidentiality of prisoners' health information, including HIV status, and will state that if a staff member intentionally discloses a prisoner's HIV status without the prisoner's approval, appropriate disciplinary action will be taken.

➢ Before any integration takes place, the ADOC will conduct mandatory education and training sessions on HIV for all correctional staff and prisoners.

➢ ADOC will also arrange for medical staff to undergo training in HIV care at the 1917 Clinic in Birmingham prior to integration. Telemedicine equipment will be installed at some of ADOC's facilities to help make sure prisoners with HIV are able to see a physician specializing in HIV care, no matter where they are placed.

➢ The ADOC will also train all classification staff that they must not routinely include HIV status in classification records and that they must not inquire into HIV status as a part of the classification process.

- When integration takes place, all transfers of prisoners with HIV will be conducted according to a process that has been designed to protect the confidentiality of HIV status at the new facility.

- The ADOC will no longer house prisoners with HIV separately from other prisoners in any facility.

- The ADOC will end the practice of isolating newly-diagnosed prisoners with HIV at intake.

- The ADOC will eliminate or revise all of its HIV-specific policies to ensure confidentiality of HIV status and medical information.  The ADOC will no longer require any prisoner to wear an arm band that directly or indirectly discloses his or her HIV status.

- The ADOC will eliminate HIV-specific work release criteria. Prisoners with HIV will be eligible for work release on exactly the same basis as prisoners who do not have HIV.

- Prisoners with HIV will no longer be excluded from food-related jobs, either within prisons or at work release.

- The ADOC will maintain an Acute Care Unit at Limestone which will house prisoners whose individual medical needs require housing in an acute care setting.  Except for medical isolation, disciplinary segregation, and administrative segregation, prisoners with

HIV in the Acute Care Unit will be housed in dorms with prisoners who do not have HIV.

- The ADOC will pay $1.3 million in Plaintiffs' attorneys' fees and expenses for all of Class Counsel's work in this lawsuit up to the entry of a final order approving the settlement.

- Both the Primary Agreement and the Private Agreement will expire on June 30, 2015, unless the Court orders this date to be extended.  During the term of the agreement, the Court will retain jurisdiction to enforce the terms of the Primary Agreement, and Class Counsel will monitor ADOC's compliance with the agreed-upon integration plan.

- Defendants and Plaintiffs waive their right to any appeal.

- The proposed settlement will not create any new right to money damages, and will have no effect on any right that any prisoner with HIV may have had, or may have in the future, to bring suit for money damages under the Americans with Disabilities Act or the Rehabilitation Act.

## What if I object to the proposed settlement?

If you want to object to the proposed settlement agreement, or comment on the proposed settlement, you may mail a written objection or comment to the Court at the address below, no later than _____, 2013:

> Clerk of the United States District Court
> attn.: *Henderson v. Thomas* Settlement
> P.O. Box 711
> Montgomery, AL 36101-0711

For your convenience, a pre-addressed form has been attached to the end of this Notice.

The Court will review all objections and comments from prisoners with HIV and will hold a fairness hearing in the Federal Courthouse in Montgomery, Alabama on _____, 2013 at 10:00 AM, to decide whether to approve the settlement.

If you want to retain your own personal lawyer to object to the proposed settlement, you may do so at your own expense. In order to be heard at the fairness hearing, any attorney representing a prisoner with HIV must file a Notice of Appearance with the Court and serve counsel for all Parties at least ten calendar days before the hearing.

**What if I have more questions about the proposed settlement?**

Class Counsel will visit Limestone, Tutwiler, Montgomery Women's Center and Decatur Work Release in the near future to explain the settlement process and documents, and answer any questions you may have.

Additionally, you may send questions in writing to:

> Margaret Winter
> Attn: *Henderson v. Thomas* Settlement
> National Prison Project of the ACLU
> 915 15th Street, N.W., Seventh Floor
> Washington, D.C., 20005

# Exhibit "C"

PROPOSED ORDER PRELIMINARILY
APPROVING PARTIES' PROPOSED
SETTLEMENT AGREEMENT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

**LOUIS HENDERSON, *et al*.,**

      Plaintiffs,

       v.                     Civil Case No. 2:11cv224-MHT

**KIM THOMAS, Commissioner,**
**Alabama Department of Corrections, *et***
***al*.,**

      Defendants.

## PROPOSED ORDER PRELIMINARILY APPROVING
## PARTIES' PROPOSED SETTLEMENT AGREEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Parties jointly move the Court to grant preliminary approval to the proposed Settlement Agreement attached as Exhibit A-1 and A-2 to this Order, and to approve the form of Notice to class members of the proposed Settlement Agreement, attached as Exhibit B to this Order.  Based on the entire record before the Court, the Court finds:

The proposed Settlement Agreement is the result of extensive arms-length negotiations between the Parties, after a five-week trial on the merits and the Court's entry of its Opinion and Judgment.  After reviewing the terms of the proposed Settlement Agreement in light of the record and of controlling legal

1

authority, the Court finds the proposed Settlement is sufficiently reasonable, adequate, fair, and consistent with relevant federal law to warrant preliminary approval and provision of notice to interested parties of a fairness hearing.

The Court also finds that the form of Notice attached hereto as Exhibit B, together with a copy of the proposed Settlement Agreement (Exhibits A-1 and A-2), constitutes due and sufficient notice of the proposed Settlement Agreement to all persons entitled to receive notice required by due process and Rule 23 of the Federal Rules of Civil Procedure. The Court further finds that the method of delivery of notice proposed by the Parties, namely, by hand-delivery by Defendants to each current member of the Plaintiff Class, at least thirty days before the deadline for filing objections as provided by Rule 23(e)(2), F.R. Civ. P., to be the most effective and practicable manner of notice under the circumstances.

IT IS THEREFORE ORDERED THAT:

1.     The proposed Settlement Agreement attached hereto as Exhibits A-1 and A-2 is PRELIMINARILY APPROVED. Final approval of the Settlement Agreement and entry of the Proposed Order attached thereto incorporating its terms is subject to a hearing and to review by the Court of any objections submitted by interested parties to the terms of the Settlement Agreement.

2.     On or before August 2, 2013, Defendants will notify Plaintiffs of the total number of class members currently in ADOC custody. On or before August

6, Plaintiffs will provide Defendants' counsel with copies of Exhibits A-1, A-2 and B for every class member in ADOC custody according to the information provided by ADOC.  On or before August 9, 2013, Defendants will provide by hand delivery a copy of Exhibits A-1, A-2, and B to every current class member in its custody as of that date.

3.     Defendants shall make arrangements to provide all class members the opportunity to meet with class counsel during the week of August 19-23, 2013.

4.     Any interested party may object to the proposed Settlement Agreement by filing an objection by September 6, 2013.  To be considered by the Court, any written objections to final approval of the proposed Settlement Agreement must state that the objector is a prisoner with HIV currently in the custody of the Alabama Department of Corrections, and must state the basis for the objection. The objection must be filed in writing, along with any other papers the objector wishes the Court to consider, by mailing them by September 6, 2013 to the Clerk of the United States District Court, attn.:   *Henderson v. Thomas* Settlement, P.O. Box 711, Montgomery, AL 36101-0711.

5.     The Court will hold a fairness hearing at --:00 AM on _____, 2013 [*the parties jointly request that this date occur between September 20 and October 1 in order to allow time for objections and to ensure it occurs prior to the end of the State's fiscal year*] at the United States District Courthouse, Montgomery,

3

Alabama, at which time the Court will hear oral argument and testimony relating to whether the settlement is fair, reasonable and adequate. In the discretion of the Court, interested persons may appear personally and be heard at the fairness hearing. Should an objector choose to be represented by counsel at the fairness hearing, he or she may do so at his or her own expense.  In order to be heard at the fairness hearing, any attorney representing an objector must file a Notice of Appearance with the Court and serve counsel for all parties at least ten calendar days before the fairness hearing. The Court will not permit anyone who fails to timely file and serve a written objection to raise such objection at the fairness hearing, except for good cause shown. Anyone who fails to object in the manner prescribed herein shall be deemed to have waived any such objection.

6.     If objections are filed, the Parties' counsel may engage in discovery concerning the objections prior to the fairness hearing.

7.     The Parties' counsel shall serve on each other and file with the Court, at least three calendar days prior to the fairness hearing, any further documents in support of the proposed Stipulated Order, including responses to any papers filed by interested parties.

IT IS SO ORDERED, this _____ day of August, 2013.

_____
UNITED STATES DISTRICT JUDGE
MYRON H. THOMPSON