## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **LOUIS HENDERSON, *et al.*,** | |
| Plaintiffs, | |
| v. | Civil Case No. 2:11cv224-MHT (WO) |
| **KIM THOMAS, Commissioner, Alabama Department of Corrections, *et al.*,** | |
| Defendants. | |

## <u>STIPULATED ORDER</u>

This matter, having come before the Court on the Joint Motion for Approval of the Parties' Settlement Agreement and Entry of Stipulated Order, and the Court having entered an Opinion and Judgment on December 21, 2012, having further ordered the provision of adequate notice to members of the Plaintiff Class of the terms of this Order, having received and considered the written objections from members of the Plaintiff Class related to the contents of this Order, having held fairness hearings on September 24, 2013, commencing at 10:00 a.m. and September 26, 2013, commencing at 11:00 a.m., having reviewed the filings, document, orders and/or admissible evidence which are currently filed of record with the Court, and having considered the arguments of counsel for the Parties and

{H0127437.2}

the other premises herein, it is hereby ORDERED and ADJUDGED, for the reasons set forth in the Opinion accompanying this Order, as follows:

1.  **NOTICE PURSUANT TO RULE 23(e)(1).** Reasonable notice of the proposed settlement was provided to the Plaintiff class in the manner directed by the Court by separate Order.  Members of the Plaintiff class were then afforded an opportunity to submit comments and objections to the Court concerning the proposed settlement.  Fairness hearings pursuant to Fed. R. Civ. P. 23(e)(2) was held on September 24 and 26, 2013, at which the Court heard arguments and testimony.

2.  **RULE 23(e)(2) FINDINGS.** The Court, having considered the arguments and testimony at the hearing, the comments submitted by class members, and the entire record in this case, concludes that the settlement is fair, reasonable, and adequate.

3.  **DISCONTINUATION OF SEPARATE HIV HOUSING**. Pursuant to the terms and conditions of this Order and the process identified herein, the ADOC will discontinue its policy and practice of housing inmates who have HIV separately from inmates who do not have HIV.  HIV-positive inmates will be housed in general population housing together with non-HIV-positive inmates, except for those HIV-positive inmates assigned to designated housing units for medical, administrative, disciplinary, protective, and/or security reasons.  The

ADOC may house HIV-positive inmates in administrative or disciplinary segregation, or protective custody, on the same basis as prisoners who do not have HIV.

4. **REVISION OR ELIMINATION OF ALL HIV-SPECIFIC POLICIES, PROTOCOLS, REGULATIONS AND STANDARD OPERATING PROCEDURES**. In order to implement the remedial plan described herein, the ADOC will revise and replace the existing rules, policies, protocols, regulations and standard operating procedures that are specifically applicable to inmates with HIV. The rules, policies, protocols, regulations and standard operating procedures which shall be eliminated, revised and/or amended are the following:

**TO BE REVISED:**

a. Exh. J-1 - Alabama Department of Corrections, Office of Health Services, HIV Serology in Determining Special Housing Needs (revised June 2011) (ADOC008886-8889);

b. Exh. J-6 - Alabama Department of Corrections, Office of Health Services, Medical Coding Assessment Guide (revised Feb. 2011) (ADOC008893);

c.      Exh. J-8 - Alabama Department of Corrections Classification Manual (revised Oct. 2010) (ADOC008663-782; see ADOC008720 & ADOC008738);

d.      Exh. J-32 - A.D.O.C. – Office of Health Services – Medical / Dental and Mental Health Services Code Match Map (recent review 03/25/10) (ADOC008783 – 8786);

e.      Exh. J-33 - Alabama Department of Corrections – Office of Health Services: Medical Health Care Code "6," Subset "A – Z" (revised Mar. 2010) (ADOC008787);

f.      Exh. J-36 - ADOC – Office of Health Services Medical Coding Assessment Guide (revised Feb. 2011) (ADOC008893);

g.      Exh. J-48 - Inmate orientation information and forms (ADOC009303 – 9317; see ADOC009306-07, ADOC009313, ADOC009315);

h.      Exh. J-63 - Alabama Department of Corrections, Office of Health Services, Division Manual, Policies and Procedures, January 20, 2012 (ADOC17740 – 18038; see ADOC017769, 17773, 17795, 17846, 17881 and 17985); and

i.      Exh. J-64 - Limestone Correctional Facility Standard Operating Procedure C-29, Residential Treatment Unit (ADOC18838 - 18845).

**TO BE ELIMINATED:**

j.      Exh. J-2 - Alabama Department of Corrections, Julia Tutwiler Prison for Women, Standard Operating Procedure No. 12-3: Inmates with Human Immunodeficiency Virus (HIV)/ Acquired Immune Deficiency Syndrome (AIDS) (Nov. 28, 2011) (ADOC009036-40);

k.      Exh. J-3 - Alabama Department of Corrections, Office of Health Services, Information for HIV+ Inmates to be Considered for or Housed at Work Release (revised May 2011) (ADOC008813);

l.      Exh. J-7 - Alabama Department of Corrections, Limestone Correctional Facility, Standard Operating Procedure E-25: Inmates with Human Immunodeficiency Virus (HIV)/Acquired Immune Deficiency Syndrome (AIDS) (May 8, 2008) (ADOC018855-61);

m.      Exh. J-34 - A.D.O.C. Inmate With HIV + Serology Health Screening and Criteria Assessment Tool; Transfer Consideration Specific to the Montgomery Work Release Program (Female) (revised Nov. 2011) (ADOC008809 – 8810);

n.      Exh. J-35 - A.D.O.C. Inmate With HIV + Serology Health Screening and Criteria Assessment Tool; Transfer Consideration Specific to the Decatur Work Release Program (Male) (revised Nov. 2011) (ADOC008811 – 8812);

o.      Exh. J-49 - Limestone Correctional Facility Post Orders, Dormitory C Cubicle Officer (ADOC009318 – 9339);

p.      Exh. J-65 - Limestone Correctional Facility Standard Operating Procedure C-55, Leatherwood Settlement (ADOC18846 - 18849).

**Procedure for Adoption of New Policies Not Listed Above.** To the extent that the ADOC elects to adopt any additional policy not specifically referenced in this Order which is applicable only to HIV-positive inmates, then the ADOC shall provide Counsel for the Plaintiff Class with a copy of the proposed policy at least 21 days prior to adoption of any such policy.  Counsel for the Plaintiff Class may submit any comments, questions or proposed revisions to counsel for the ADOC within 14 days after receipt of such policy.  To the extent that the Parties cannot reach a consensus on any such proposed policy during the term of this Order, such disagreement shall be submitted to Magistrate Judge Wallace Capel for resolution consistent with the Dispute Resolution provisions contained herein.

**Specific Amendments to the Policies Listed Above:** The ADOC will maintain the discretion and authority to revise its policies and procedures consistent with the terms and conditions of this Order and the ADOC specifically agrees to revise policies and procedures which will address (a) the confidentiality of medical information pertaining to all inmates consistent with the requirements of applicable law, and (b) the adoption of revised Medical Coding criteria which

result in the elimination of the automatic classification of prisoners with HIV with one specific Medical Code.

**Procedure for Revision of Policies Listed Above:** The ADOC will provide Counsel for the Plaintiff Class a copy of any and all revised policies on or before September 1, 2013.  Counsel for the Plaintiff Class will provide any suggested further revisions on or before October 1, 2013.

**Procedure for Creation of New Acute Care Policy:** Pursuant to the Settlement Agreement, the ADOC has provided Counsel for the Plaintiff Class a copy of the new policy pertaining to the Acute Care Unit at Limestone Correctional Facility, and Counsel for the Plaintiff Class has provided suggested further revisions to the ADOC.  To the extent there is any disagreement over such policies that is not rectified by discussions between the Parties, any such disagreement shall be subject to the dispute-resolution provisions herein.

5.     **ACUTE CARE UNIT**.  The ADOC will maintain an Acute Care Unit at Limestone Correctional Facility for housing inmates whose individual medical condition, as determined by the HIV Specialist or another authorized medical professional, justifies special housing assignments in a setting that provides acute care.  If a prisoner with HIV has been assigned to administrative or disciplinary segregation, but the HIV Specialist or another authorized medical professional determines it is in the inmate's medical interest to be housed in the close

observation setting, the inmate may be housed in segregation within the Acute Care Unit.

6.     **NO ISOLATION AT INTAKE**.  The ADOC will cease the practice of isolating newly-diagnosed HIV-positive inmates at Julia Tutwiler Prison for Women and Kilby Correctional Facility on or before August 1, 2013.   Upon cessation of this practice, any inmate who receives a positive ELISA test result for HIV will remain housed in the receiving unit at Julia Tutwiler Prison for Women or Kilby Correctional Facility, unless such inmate must be housed in a separate housing area due to disciplinary, protective or other security-related reasons or because an authorized medical provider determines that the inmate needs to be housed separately for medical reasons.  The ADOC will inform Counsel for the Plaintiff Class in writing when they have ended the prior intake process for HIV-positive inmates at Julia Tutwiler Prison for Women and Kilby Correctional Facility.

7.     **PRE-TRANSFER PREPARATIONS**.   Before any HIV-positive inmate is transferred to any facility under this revised housing plan, the following preparatory steps will be completed:

a.     <u>Initial Written Directive from ADOC Commissioner</u>.  At the outset of the implementation of this proposed remedial plan, the ADOC Commissioner will issue three separate written directives to (1) all classification

staff, (2) senior security staff (i.e. wardens, captains, and above) and other security staff, and (3) all inmates, notifying these individuals of the changes in the ADOC's housing practices related to HIV-positive inmates, as described below.  The written directives will express the ADOC Commissioner's commitment to complying with the Court's judgment and ending the prior policies of the ADOC as it relates to prisoners with HIV.  The directives to staff and inmates will also express commitment to ensuring that these individuals receive further education as to the current state of science relative to HIV and AIDS as well as an explicit directive that expresses ADOC's zero tolerance of any prisoner threatening, abusing or undertaking acts of violence or abuse against any other inmate because of his or her HIV status.  The directives to staff will include a mandate from the Commissioner that all ADOC personnel must respect the confidentiality of the medical conditions of all inmates, including the HIV-positive status of certain inmates, and that the intentional disclosure of any inmate's medical status, including an HIV-positive diagnosis, may constitute a violation of ADOC policy and will result in consideration of disciplinary action.  The Directives are attached to the Parties' Agreement as Exhibit B.

      b.    <u>Training of Correctional Staff by AATEC</u>.  The ADOC will enter into a Memorandum of Understanding with the Alabama AIDS Training and Education Center ("AATEC") to provide correctional staff with training sessions

throughout the system.   ADOC and AATEC will agree on the duration of the training sessions. Training will be mandatory for all staff on all shifts.

Topics to be covered in this training will include the matters identified in the memorandum by Richard Meriwether with AATEC which is attached to the Parties' Agreement as Exhibit C, as well as an additional training segment utilized by AATEC related to HIV stigma.  Training sessions will include opportunities for staff members to ask questions.  The ADOC will continue to offer basic training related to communicable diseases and "universal precautions" through training offered to correctional officer candidates at the Alabama Corrections Academy. The ADOC will incorporate a segment related to HIV prejudice and stigma within the current Academy curriculum.

c.     Education Training for Inmates.  The ADOC staff (together with representatives of the ADOC's independent medical provider) will provide educational training to inmates at each of the subject institutions (excluding Decatur Work Release and Montgomery Women's Center where such training has been previously provided).  All individuals conducting training will be at least registered nurses licensed in the State of Alabama.  This training will occur first at Julia Tutwiler Prison for Women.  The materials and lesson plans to be utilized in the training of inmates will relate to HIV and other sexually transmitted infections ("STIs"), and will be mutually agreed upon by the Parties prior to the

commencement of training.  To the extent there is any disagreement regarding these materials and plans that is not rectified by discussions between the Parties, any such disagreement shall be subject to the dispute-resolution provisions herein. Beginning on or before June 1, 2014, the ADOC will provide the Inmate Training Handouts on HIV and other STIs to all incoming inmates.

      d.   <u>Training of Medical Staff by AATEC</u>.  Each clinician who is expected to provide primary care at facilities housing HIV-positive inmates will engage in a mandatory preceptorship with UAB's 1917 Clinic.  The hours of training devoted by each medical professional will vary depending upon their medical training, education and/or experience as well as the expected tasks assigned to them related to HIV-specific care.  To the extent necessary, the ADOC's independent medical provider may identify additional laboratory personnel who may receive training to ensure the accuracy of laboratory results for testing specific to HIV.

      e.   <u>Installation of Additional Telemedicine Units</u>.  Before the reassignment of HIV-positive inmates to any of the subject facilities, the ADOC will install telemedicine units (i.e. videoconferencing hardware) at facilities where such telemedicine units are necessary for the delivery of HIV-specific consultation.

      f.   <u>Training of Classification Staff</u>.  Additional training of ADOC Classification staff will be conducted internally.  As part of this training, ADOC

will train classification personnel that an inmate's HIV status must not be documented in his or her classification file, except when such information must necessarily be included as part of an inmate's classification record (for example, when an inmate's HIV status is an element of his or her criminal conviction). During this training, classification personnel will also be instructed not to inquire into an inmate's HIV status.   The site classification personnel will attend the AATEC trainings provided to correctional staff at each facility.   Classification personnel situated outside of individual ADOC facilities are not required to receive any such training under this Order.

       g.    <u>Reclassification of HIV-Positive Inmates</u>.   All HIV-positive inmates will undergo a reclassification under the revised housing policy pursuant to the existing ADOC Classification Manual.  The ADOC will classify each inmate without regard to his or her HIV-positive status, consistent with ADOC's classification policies and procedures.  No inmate will be given authority to choose or direct his or her placement at any particular facility.   Any documentation produced during the reclassification process will conform to the instructions provided to classification personnel during the training sessions identified above in Paragraph 7.f.  Consistent with the terms of the ADOC Classification Manual (including Section 4.4.3 thereof), the reclassification of HIV-positive inmates under this Order may constitute a "lateral transfer" and, as such, the ADOC may

consider an inmate's request for assignment to "an institution that is closer to home or for program participation."

        h.    <u>Reassignment to Begin at Julia Tutwiler Prison for Women and Kilby Correctional Facility</u>.  The reassignment of HIV-positive inmates will begin at Julia Tutwiler Prison for Women and Kilby Correctional Facility and that initial reassignment of inmates within these facilities will be utilized to identify any actual or potential issues which may result from these housing reassignments to prevent any further issues at any other locations.  Beginning on August 1, 2013, newly arriving female HIV-positive inmates will be processed together with non-HIV-positive female inmates through the intake / receiving process at Julia Tutwiler Prison for Women, which includes initial assignment to the receiving dorm within Tutwiler.

Beginning on September 13, 2013, newly arriving male HIV-positive inmates will be processed together with non-HIV-positive male inmates through the intake / receiving process at Kilby Correctional Facility, which includes initial assignment to the receiving dorm within Kilby.  Upon completion of the intake / receiving process, male HIV-positive inmates will be transferred to the Permanent Party dorm once sufficient beds are available, on the same basis as other inmates.  These newly arriving male HIV-positive inmates assigned to the Permanent Party dorm will be subject to reassignment beginning on June 1, 2014.

8.    **IMPLEMENTATION    SCHEDULE**.    The    schedule    for
implementation of the matters set forth in this Order shall be as follows:

| | |
|---|---|
| July 30, 2013 | Complete Security Staff and Inmate Training at Tutwiler and Kilby |
| July 30, 2013 | Complete Training for Classification Staff at Tutwiler and Kilby |
| July 30, 2013 | Complete Reclassification of Female Inmates at Tutwiler |
| August 1, 2013 | Reassign Female Inmates within Tutwiler |
| August 1, 2013 | Begin Assigning Incoming HIV-Positive Inmates to Receiving Dorms at Tutwiler and Kilby |
| September 3, 2013 | HIV-Positive Female Inmates first eligible for assignment to Birmingham Work Release |
| September 3, 2013 | ADOC issues Commissioner's Directives |
| September 13, 2013 | Begin Assignment of Incoming Male HIV-Positive Inmates at Kilby to Permanent Party Dorms |
| April 1, 2014 | Complete Installation of Telemedicine Equipment |
| May 1, 2014 | Complete Training for All Correctional and Medical Personnel and Inmates |
| June 1, 2014 | Begin Reassignment of Male HIV-Positive Inmates at Limestone |
| November 1, 2014 | Complete Reassignment of All HIV-Positive Inmates |

To the extent that the ADOC does not complete its specific obligations (as defined
in this Agreement) within the timeframes set forth above, the Parties reserve the
right to mutually agree in writing to an extension of this Order and the Plaintiff
Class reserves the right to request an extension of the term of this Order as well as
the reporting requirements stated herein and/or to seek enforcement of the above
timeframes.

9.    **TRANSFER OF HIV-POSITIVE INMATES TO SELECT FACILITIES**.  Pursuant to the terms of this Order, HIV-positive inmates will be eligible to be housed at the following facilities:

| | |
|---|---|
| Birmingham Work Release | Tutwiler Prison for Women |
| Decatur Work Release | Staton Correctional Facility |
| Donaldson Correctional Facility | Bullock Correctional Facility |
| Fountain Correctional Facility | Elmore Correctional Facility |
| Limestone Correctional Facility | St. Clair Correctional Facility |
| Loxley Work Release | Mobile Work Release |
| Montgomery Women's Center | Red Eagle Work Center |

Nothing in this Order should be construed as creating any obligation for the ADOC to house any inmates in any facilities operated by the ADOC within the State of Alabama other than the facilities listed above.  The Parties reserve the right to enter into a separate, independent agreement under which they may expand upon the number of facilities where HIV-positive inmates may be housed under the same circumstances as described in this Order.

10.    **WORK RELEASE CRITERIA**. The ADOC will implement and maintain a work release clearance policy and procedure which will be uniformly applied to all eligible inmates including all eligible HIV-positive inmates.  In other words, the ADOC will no longer maintain any separate or distinct medical clearance form or criteria for eligible HIV-positive inmates.  The work release

criteria will be utilized in the basic form and substance attached to the Parties' Agreement as Exhibit D.  The ADOC may revise and alter the attached work release criteria to the extent necessary so long as the work release criteria do not include any criteria applicable only to HIV-positive inmates.

11.    **ARM BANDS**. Nothing contained in this Order shall prohibit the ADOC from utilizing arm bands to identify inmates housed in particular housing units in any ADOC facility, so long as the use of arm bands does not result in a direct or indirect means of disclosure of any inmate's HIV-positive status.

12.    **ATTORNEYS' FEES AND EXPENSES**.[1]  The ADOC shall remit to Counsel for the Plaintiff Class payment in the amount of One Million Three Hundred Thousand and No/100 ($1,300,000.00), which shall constitute payment for any and all attorneys' fees and expenses incurred, charged and/or otherwise generated by Counsel for the Plaintiff Class from the inception of the Litigation through the date of entry of this Order.  The Parties further agree that the above-

---

[1] The Court has independently evaluated the reasonableness of the attorneys' fees and expenses agreed upon by the parties.  After considering (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases, the Court finds that the agreed-upon fees set forth herein are reasonable.

referenced sum may be paid by the ADOC in three separate installment payments as follows: $450,000 within 30 days after entry of the Stipulated Order, $450,000 on or before June 2, 2014, and $400,000 on or before November 3, 2014. The Parties acknowledge and agree that the payments reflected in this paragraph constitute payment in full of attorneys' fees and expenses claimed by the Plaintiff Class and/or its counsel and/or owed by all Defendants in this matter through the date of the entry of this Order. The Plaintiff Class and its counsel hereby voluntarily, completely and unconditionally waive any and all right, claim and/or entitlement to the recovery of any monies of any kind from any Defendant in this action for any and all attorneys' fees and/or expenses incurred, charged and/or otherwise generated by Counsel for the Plaintiff Class from the filing of this action through the date of entry of this Order.

Upon the termination or expiration of this Order pursuant to Paragraph 20 below, and from time to time prior to such termination, the Plaintiff Class may petition the Court for an award of attorneys' fees and expenses incurred by Counsel for the Plaintiff Class for the period of time beginning on the date of the entry of this Order and continuing through the date of the termination or expiration of this Order, or a subperiod thereof. Plaintiff Class and its counsel specifically agree that they shall charge an hourly rate of $195.00 per hour for attorneys and $100.00 per hour for non-attorneys for any fees incurred following the entry of this

Order and that they shall not seek reimbursement for any fees, retainers, costs, charges or expenses of any kind incurred by any expert retained by the Plaintiff Class or its counsel for work done or tasks completed during the term of the Parties' Agreement. The ADOC and the Defendants reserve their rights to object to and/or oppose any petition or request by the Plaintiff Class and/or its counsel for any fees or expenses which may be sought after the date of the execution of their Agreement. However, the ADOC and the Defendants agree that they will not assert in any such objection or opposition that the hourly rates agreed upon above are not reasonable.

13. **ACCESS TO INMATE RECORDS**. Counsel for the Plaintiff Class will have access to copies of the medical and/or institutional records of members of the Plaintiff Class. With respect to inmate medical records, Counsel for the Plaintiff Class shall provide the release of medical information forms typically used by the ADOC and its independent medical provider, at the time of the record request. Counsel for the Plaintiff Class will pay reasonable copying charges for such records not to exceed $0.50 per page.

14. **REPORTING REQUIREMENTS**. During the term of this Order, the ADOC shall provide the following reports on or before the dates shown below:

a.    <u>Inmate Housing Reports</u>: On May 15, 2014, August 15, 2014, November 17, 2014, February 13, 2015 and June 15, 2015, the ADOC will report to Counsel for the Plaintiff Class:

i.    The name, AIS Number, assigned facility, custody level, medical code, mental health code, and EOS date for each member of the Plaintiff Class.  The first time each inmate appears on this report, the ADOC will also report his or her county of commitment;

ii.    the Names and AIS Numbers of HIV-positive Inmates assigned to the Acute Care Unit;

iii.    the Number of HIV-positive Inmates assigned to the Acute Care Unit who are housed in disciplinary or administrative segregation;

iv.    the Number of HIV-positive Inmates assigned to the Acute Care Unit who are housed in the infirmary at Limestone Correctional Facility;

v.    the Number of HIV-negative Inmates assigned to the Acute Care Unit who are housed in the infirmary at Limestone Correctional Facility; and

vi.    the Number of HIV-positive Inmates assigned to the Acute Care Unit who are housed in a general population dormitory at Limestone Correctional Facility.

b.   <u>Medical Training Reports</u>: On October 1, 2013, February 3, 2014 and June 2, 2014, the ADOC will report to Counsel for the Plaintiff Class:

i.      the Titles of medical contractor personnel who have completed the 1917 Clinic preceptorships referenced in this Order, and the dates of those preceptorships; and

ii.      the Titles of any medical personnel who are scheduled to complete preceptorships under the terms of this Order but have not yet done so.

c.   <u>Inmate & Staff Training Reports</u>: On October 1, 2013, February 3, 2014 and June 2, 2014, the ADOC will report to Counsel for the Plaintiff Class:

i.      Locations and dates that HIV training sessions referenced in this Order took place since June 15, 2013;

ii.      Approximate number of attendees at each session; and

iii.      The number of classification staff and correctional staff who have yet to be trained at the facilities where trainings for their respective groups have already taken place.

Pursuant to the Health Insurance Portability and Accountability Act (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (1996), this Order expressly authorizes the ADOC and any health care provider, health plan, or other covered entity that contracts with ADOC to periodically provide to Counsel for the Plaintiff

Class the names and AIS numbers of all prisoners with HIV who are assigned to the Acute Care Unit at Limestone Correctional Facility, even if such production would result in the release of protected health information of such prisoners.  The Parties are expressly prohibited from using or disclosing the protected health information obtained pursuant to this Order for any purpose other than this action.  Further, the Parties shall either return to the covered entity from whom or which such protected health information was obtained, or to destroy the protected health information (including all copies made), immediately upon expiration of this Order.  See 45 C. F. R. §§ 163.502(b); 164.512(e)(1)(v).  This Order is and shall constitute an "order of a court or administrative tribunal" pursuant to the Privacy Rule, 45 C.F.R. § 164.512(e)(1)(i), promulgated under the Health Insurance Portability and Accountability Act (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (1996). "Protected health information" and "covered entities" have the meanings set forth in 45 C.F.R. § 160.103.

15.    **NOTIFICATION REGARDING MEDICATION COMPLAINTS**.
To the extent that Counsel for the Plaintiff Class receives any report from any member of the Plaintiff Class that he or she is not receiving his or her HIV-related medications as prescribed, such complaints may be initially submitted via electronic mail to the following e-mail address: anne.hill@doc.alabama.gov and must be followed with a copy sent via United States Mail to Anne Adams Hill at

the following mailing address: Anne Adams Hill, Alabama Department of Corrections, Post Office Box 301501, Montgomery, Alabama 36130-1501.

16.  **PLACEMENT OF AGREEMENT IN LAW LIBRARIES**.  The ADOC will place a copy of the Parties' Agreement in the law library at every ADOC facility where one exists.

17.  **NO MONETARY COMPENSATION**.  Excluding the payment of attorneys' fees and costs to Counsel for the Plaintiff Class in this action, nothing contained in this Order creates, mandates or constitutes any obligation of any Defendant, the State of Alabama and/or the Alabama Department of Corrections to compensate, pay or otherwise provide any monetary payment of any kind to any inmate formerly housed, currently housed or housed in the future in any correctional facility operated by or at the direction of the Alabama Department of Corrections.  Moreover, nothing in this Order creates any basis for any purported or actual Class Member to seek any financial recovery or monetary benefit of any kind from any Defendant, the State of Alabama and/or the Alabama Department of Corrections.  Nothing in this Order is intended to curtail the rights of individual prisoners with HIV to bring lawsuits for violations of the Americans with Disabilities Act or the Rehabilitation Act, which are not otherwise barred for reasons unrelated to this Order.

18.   **NO APPEAL**.  All Parties have waived all rights to seek any appeal from and/or appellate review of this Order.

19.   **COURT'S RETENTION OF JURISDICTION TO ENFORCE THE ORDER**.  Upon the entry of this Order, the Circuit Clerk for the United States District Court for the Middle District of Alabama is hereby directed to administratively close this case, but the Court shall retain jurisdiction to enforce this Order.

20.   **EXPIRATION OF ORDER**.  Unless otherwise agreed in writing by the Parties or extended by Order of the Court or unless a motion to extend the term of this Order is then pending, this Order shall expire by its own terms at 12:00 p.m. (Central Daylight Savings Time) on June 30, 2015.  In the event that any such pending motion identified above (as of June 30, 2015) is denied, this Order shall expire on the date on which such motion is denied by the Court.

21.   **NO WAIVER OF PRIVILEGE**.   Nothing in this Order or undertaken pursuant to this Order constitutes or is intended to constitute a waiver of any applicable privilege of any kind.

22.   **FINDINGS PURSUANT TO 18 U.S.C. § 3626(a)**.  The Court specifically finds that the prospective relief in this Order is narrowly drawn, extends no further than necessary to correct the violations of federal rights as alleged by the Plaintiff Class in the Second Amended Complaint, is the least

intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system. Accordingly, this Order complies in all respects with the provisions of 18 U.S.C. § 3626(a).

In making these findings pursuant to 18 U.S.C. § 3626(a), the Court expressly acknowledges that it is not relying in any way on all or any portion of any Private Settlement Agreement and nothing in this Order is intended to address, incorporate or render enforceable in this Court any obligation undertaken or assumed by the ADOC under the Private Settlement Agreement, which shall be enforceable pursuant to its own terms in a state court of competent jurisdiction.

Nothing contained in this Order or the Parties' Agreement shall be construed as an admission of any kind by the State of Alabama, any Defendant and/or any agent, employee, officer and/or representative of the Alabama Department of Corrections, except as expressly stated in this Order and the Parties' Agreement.

23.    **DISPUTE RESOLUTION**.  In the event of any dispute related to the terms and conditions of this Order, the Parties shall submit to mediation before United States Magistrate Judge Wallace Capel prior to filing any document with the Court related to the alleged matters which are the subject of the dispute.  To the extent that any party files any such motion or pleading with the Court without first submitting the matter to mediation, any such filing shall be dismissed *without prejudice* pending the outcome of mediation.

24.   **PRESS STATEMENTS.** Upon entry of this Order, the Parties shall issue the Joint Press Statement attached as Exhibit E to their Agreement, and any Party may subsequently choose to issue any other public statement.

25.   **NO ADDITIONAL EMPLOYMENT OBLIGATIONS**. Nothing in this Order shall be construed in any way as creating any obligation of any kind upon any Defendant, the State of Alabama or the Alabama Department of Corrections to hire, retain and/or employ any consultant, advisor, correctional officer, medical professional or other individuals of any kind, excluding the retention of AATEC.

26.   **NO VIOLATION OF ANY OTHER APPLICABLE COURT ORDERS**.   Nothing in this Order is intended to create any obligation or requirement which would result in the violation of any other currently existing order entered by a Court of competent jurisdiction.

It is further ORDERED that all outstanding motions are denied as moot.

The Clerk of the Court is DIRECTED to enter this document on the civil docket as a Final Judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

This case is closed.

IT IS SO ORDERED, this 30th day of September, 2013.


/s/  Myron H. Thompson
UNITED STATES DISTRICT JUDGE
MYRON H. THOMPSON